# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-20215-CIV-HUCK/O'SULLIVAN

IN RE BANCO SANTANDER
SECURITIES–OPTIMAL LITIGATION

**DEFENDANT PRICEWATERHOUSECOOPERS IRELAND'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Richard H. Critchlow (Bar No. 155227)
Harry R. Schafer (Bar No. 508667)
**KENNY NACHWALTER, P.A.**
Miami Center – Suite 1100
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 373-1000
Facsimile:  (305) 372-1861
rhc@kennynachwalter.com
hrs@kennynachwalter.com

Thomas G. Rafferty (*Admitted Pro Hac Vice*)
Antony L. Ryan (*Admitted Pro Hac Vice*)
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
trafferty@cravath.com
aryan@cravath.com

November 18, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

MEMORANDUM OF LAW ................................................................................................ 1

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ...................................................................................................................... 6

I.   PWC IRELAND IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE
     UNITED STATES. ...................................................................................................... 6

     A.   PwC Ireland Lacks the Minimum Contacts Necessary for General
          Jurisdiction. ....................................................................................................... 7

     B.   PwC Ireland Lacks the Minimum Contacts Necessary for Specific
          Jurisdiction. ..................................................................................................... 10

          1.   PwC Ireland did not purposefully avail itself of the privilege of
               conducting activities in the United States related to Plaintiffs'
               claims. ...................................................................................................... 10

          2.   PwC Bermuda and PwC U.S. were not agents of PwC Ireland, and
               their alleged conduct in the United States related to Plaintiffs'
               claims cannot give rise to personal jurisdiction over PwC Ireland ........... 12

          3.   PwC Ireland had no reason to anticipate being haled into a U.S.
               court based on its audits of the Ireland-based Optimal SUS fund. ........... 14

     C.   The Exercise of Jurisdiction over PwC Ireland Would Be Contrary to Fair
          Play and Substantial Justice. ........................................................................... 15

II.  PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR
     FAILURE TO STATE A CLAIM AGAINST PWC IRELAND. ................................... 16

     A.   Plaintiffs Fail To Plead Facts Creating a Strong Inference of Scienter by
          PwC Ireland. ................................................................................................... 16

     B.   Plaintiffs Fail To Allege Reliance on any Statement by PwC Ireland .............. 20

III. PWC IRELAND IS NOT SUBJECT TO PERSONAL JURISDICTION IN
     FLORIDA FOR THE COMMON-LAW CLAIMS. ...................................................... 21

i

IV.   PLAINTIFFS' COMMON-LAW CLAIMS AGAINST PWC IRELAND FAIL
      TO STATE A CLAIM. ....................................................................................23

      A.    Plaintiffs Do Not State a Claim Against PwC Ireland for Negligence. .................24

      B.    Plaintiffs Do Not State a Claim Against PwC Ireland for Gross
            Negligence. ........................................................................................27

      C.    Plaintiffs Do Not State a Claim Against PwC Ireland for Unjust
            Enrichment. .......................................................................................28

V.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON
      CONVENIENS.* ...........................................................................................30

      A.    Ireland Is an Adequate Alternative Forum. .............................................30

      B.    Private and Public Interests Weigh in Favor of Dismissal. ....................32

CONCLUSION ...................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullahi v. Pfizer, Inc.*,
   562 F.3d 163 (2d Cir. 2009) .................................................................................31

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*,
   957 F. Supp. 1308 (S.D.N.Y. 1997) ..............................................................28-29

*Able Fund, Inc. v. KPMG Accountants NV*,
   247 Fed. Appx. 504 (5th Cir. 2007) ......................................................................11

*Adventist Health Sys./Sunbelt Inc. v. Medical Savings Ins. Co.*,
   No. 6:03-cv-1121-Orl-19KRS, 2004 U.S. Dist. LEXIS 30976
   (M.D. Fla. Mar. 8, 2004) ......................................................................................28

*Allstate Ins. Co. v. Hague*,
   449 U.S. 302 (1981) ..............................................................................................23

*Applestein v. Deloitte Haskins & Sells*,
   637 So. 2d 349 (Fla. 3d DCA 1994) .....................................................................25

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987) .........................................................................................15-16

*Associated Trans. Line, Inc. v. Productos Fitosanitarios Proficol el Carmen, S.A.*,
   197 F.3d 1070 (11th Cir. 1999) ..............................................................................8

*Banco de Credito Indus., S.A. v. Tesoreria General*,
   990 F.2d 827 (5th Cir. 1993) .................................................................................23

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ..............................................................................................20

*Bersch v. Drexel Firestone, Inc.*,
   519 F.2d 974 (2d Cir. 1975) ....................................................................................9

*Bongat v. Fairview Nursing Care Ctr., Inc.*,
   341 F. Supp. 2d 181 (E.D.N.Y. 2004) ..................................................................29

*Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*,
   786 F.2d 1055 (11th Cir. 1986) ...........................................................................7-8

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
   902 F.2d 829 (11th Cir. 1990) ..............................................................................22

*Chazen v. Deloitte & Touche, LLP,*
    247 F. Supp. 2d 1259 (N.D. Ala. 2003), *aff'd in relevant part, rev'd in part on other grounds,* 88 Fed. Appx. 390 (11th Cir. 2003)...................................................................33-34

*Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.,*
    412 So. 2d 883 (Fla. 2d DCA 1982) .................................................................................28

*Compudyne Corp. v. Shane,*
    453 F. Supp. 2d 807 (S.D.N.Y. 2006)..............................................................................28

*Consol. Dev. Corp. v. Sherritt, Inc.,*
    216 F.3d 1286 (11th Cir. 2000) ...............................................................................6-7, 8, 9

*Credit Alliance Corp. v. Arthur Andersen & Co.,*
    483 N.E.2d 110 (N.Y. 1985).............................................................................................24

*Crigger v. Fahnestock & Co.,*
    No. 01 Civ. 07819 (JFK), 2003 WL 22170607 (S.D.N.Y. Sep. 18, 2003)......................29

*D'Acquisto v. Washington,*
    750 F. Supp. 342 (N.D. Ill. 1990) ....................................................................................22

*Da Rocha v. Bell Helicopter Textron, Inc.,*
    451 F. Supp. 2d 1318 (S.D. Fla. 2006) ............................................................................31

*Doe v. Hyland Therapeutics Div.,*
    807 F. Supp. 1117 (S.D.N.Y. 1992)..................................................................................32

*Doonan v. Carnival Corp.,*
    404 F. Supp. 2d 1367 (S.D. Fla. 2005) ............................................................................13

*Dowling v. Hyland Therapeutics Div. Travenol Labs., Inc.,*
    767 F. Supp. 57 (S.D.N.Y. 1991)......................................................................................32

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
    595 F. Supp. 2d 1253 (M.D. Fla. 2009) ...........................................................................17

*Enic, PLC v. F.F. South & Co.,*
    870 So. 2d 888 (Fla. 5th DCA 2004) ................................................................................13

*Equitable Life Assurance Soc'y of United States v. Alexander Grant & Co.,*
    627 F. Supp. 1023 (S.D.N.Y. 1985)..................................................................................27

*Esfeld v. Costa Crociere, S.P.A.,*
    289 F.3d 1300 (11th Cir. 2002) ........................................................................................30

*Eyak Native Vill. v. Exxon Corp.,*
    25 F.3d 773 (9th Cir. 1994) ..............................................................................................22

*FDIC v. Gonzalez-Gorrondona,*
    833 F. Supp. 1545 (S.D. Fla. 1993) ..................................................................................29

*Fezzani v. Bear, Stearns & Co.,*
  592 F. Supp. 2d 410 (S.D.N.Y. 2008) ..................................................................21

*First Fla. Bank, N.A. v. Max Mitchell & Co.,*
  558 So. 2d 9 (Fla. 1990) ...............................................................24-25, 26, 27

*Fojtasek v. NCL (Bahamas) Ltd.,*
  613 F. Supp. 2d 1351 (S.D. Fla. 2009) ..............................................................13

*Ford v. Brown,*
  319 F.3d 1302 (11th Cir. 2003) .........................................................................32

*Future Tech. Today, Inc. v. OSF Healthcare Sys.,*
  218 F.3d 1247 (11th Cir. 2000) .....................................................................7, 12

*Garfield v. NDC Health Corp.,*
  466 F.3d 1255 (11th Cir. 2006) .............................................................17, 18, 19

*Gibbons v. Udaras na Gaeltachta,*
  549 F. Supp. 1094 (S.D.N.Y. 1982) ...................................................................32

*Granite Partners, L.P. v. Bear, Stearns & Co.,*
  17 F. Supp. 2d 275 (S.D.N.Y. 1998) ..................................................................28

*Grupo Televisa, S.A. v. Telemundo Commc'n Group, Inc.,*
  485 F.3d 1233 (11th Cir. 2007) .........................................................................23

*Gulf Atl. Transp. Co. v. Offshore Tugs, Inc.,*
  740 F. Supp. 823 (M.D. Fla. 1990) ....................................................................12

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ............................................................................................32

*Helicopteros Nacionales de Colom., S.A. v. Hall,*
  466 U.S. 408 (1984) .........................................................................................8, 9

*Holmes v. Baker,*
  166 F. Supp. 2d 1362 (S.D. Fla. 2001) ..............................................................17

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass P.A.,*
  421 F.3d 1162 (11th Cir. 2005) ................................................................ *passim*

*Houbigant v. Deloitte & Touche, L.L.P.,*
  753 N.Y.S.2d 493 (App. Div. 2003) ...................................................................25

*HSA Residential Mortgage Servs. of Texas v. Cassucio,*
  350 F. Supp. 2d 352 (E.D.N.Y. 2003) ................................................................27

*In re Eagle Bldg. Tech., Inc. Sec. Litig.,*
  319 F. Supp. 2d 1318 (S.D. Fla. 2004) ..............................................................18

v

*In re NationsMart Corp. Sec. Litig.,*
    130 F.3d 309 (8th Cir. 1998) ..................................................................................20

*In re Sahlen & Assocs. Sec. Litig.,*
    773 F. Supp. 342 (S.D. Fla. 1991) .....................................................................20, 21

*In re Spear & Jackson Sec. Litig.,*
    399 F. Supp. 2d 1350 (S.D. Fla. 2005) ...........................................................17, 18, 19

*Instituto de Prevision Militar v. Merrill Lynch & Co.,*
    No. 05-22721-CIV, 2007 WL 2900318 (S.D. Fla. Sept. 28, 2007),
    *aff'd,* 546 F.3d 1340 (11th Cir. 2008)....................................................................20

*Inv. Corp. of Fla. v. Buchman,*
    208 So. 2d 291 (Fla. 1968) .....................................................................................27

*JP Foodservice Distribs., Inc. v. PricewaterhouseCoopers,*
    822 N.Y.S.2d 47 (App. Div. 2006) ........................................................................25

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000)....................................................................................28

*Koger, Inc. v. O'Donnell,*
    No. 07-3091 (KSH), 2007 WL 3232586 (D.N.J. Oct. 31, 2007)............................32

*LaSalle Nat'l Bank v. Ernst & Young L.L.P.,*
    729 N.Y.S.2d 671 (App. Div. 2001) ..................................................................25, 26

*Leon v. Millon Air, Inc.,*
    251 F.3d 1305 (11th Cir. 2001) ..............................................................................32

*Machata v. Seidman & Seidman,*
    644 So. 2d 114 (Fla. 4th DCA 1994) .................................................................25, 26

*Madara v. Hall,*
    916 F.2d 1510 (11th Cir. 1990) ..............................................................................15

*Magnin v. Teledyne Cont'l Motors,*
    91 F.3d 1424 (11th Cir. 1996) ................................................................................31

*Martinez v. Weyerhaeuser Mort. Co.,*
    959 F. Supp. 1511 (S.D. Fla. 1996) ........................................................................29

*Mazzaro de Abreu v. Bank of Am. Corp.,*
    525 F. Supp. 2d 381 (S.D.N.Y. 2007)......................................................................28

*McLaughlin v. Am. Tobacco Co.,*
    522 F.3d 215 (2d Cir. 2008)....................................................................................20

*Meier v. Sun Int'l Hotels, Ltd.,*
    288 F.3d 1264 (11th Cir. 2002) ..............................................................................22

vi

*Meterlogic, Inc. v. Copier Solutions, Inc.*,
126 F. Supp. 2d 1346 (S.D. Fla. 2000) ...............................................................13, 14

*Nippon Credit Bank Ltd. v. Matthews*,
291 F.3d 738 (11th Cir. 2002) ................................................................................7, 22

*Nova Info Sys., Inc. v. Greenwich Ins. Co.*,
No. 6:00-cv-1703-Orl-31KRS, 2002 WL 32075792
(M.D. Fla. Dec. 13, 2002) ...........................................................................................28

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
558 F.3d 1210 (11th Cir. 2009) ..................................................................................10

*Parrott v. Coopers & Lybrand, L.L.P.*,
741 N.E.2d 506 (N.Y. 2000).........................................................................25-26, 27

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)................................................................................................30, 31

*Rambo v. American S. Ins. Co.*,
839 F.2d 1415 (10th Cir. 1988) ...................................................................................12

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ..........................................................................30-31, 33

*Ross v. Bank South, N.A.*,
885 F.2d 723 (11th Cir. 1989) .....................................................................................20

*Rotterdam Ventures, Inc. v. Ernst & Young L.L.P.*,
752 N.Y.S.2d 746 (App. Div. 2002) ............................................................................27

*Satz v. McDonnell Douglas Corp.*,
244 F.3d 1279 (11th Cir. 2001) .........................................................................30-31, 32

*Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*,
81 F.3d 1224 (2d Cir. 1996).................................................................................30, 31

*SEC v. Carrillo*,
115 F.3d 1540 (11th Cir. 1997) ..........................................................................6, 10, 15

*Security Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*,
597 N.E.2d 1080 (N.Y. 1992).....................................................................................25

*SIPC v. BDO Seidman, L.L.P.*,
746 N.E.2d 1042 (N.Y. 2001).....................................................................................25

*Sloss Indus. Corp. v. Eurisol*,
488 F.3d 922 (11th Cir. 2007) .....................................................................................12

*Snow v. DirectTV, Inc.*,
450 F.3d 1314 (11th Cir. 2006) ...............................................8-9, 9-10, 12-13, 14

*State Street Trust Co. v. Ernst*,
   15 N.E.2d 416 (N.Y. 1938) ...................................................................................27

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) .........................................................................................16

*Sturm v. Marriott Marquis Corp.*,
   26 F. Supp. 2d 1358 (N.D. Ga. 1998) ..................................................................21

*Sun Bank, N.A. v. E.F. Hutton & Co.*,
   926 F.2d 1030 (11th Cir. 1991) ...........................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................16-17, 19

*Thunderwave, Inc. v. Carnival Corp.*,
   954 F. Supp. 1562 (S.D. Fla. 1997) ....................................................................28

*Trumpet Vines Invs., N.V. v. Union Capital Partners I, Inc.*,
   92 F.3d 1110 (11th Cir. 1996) .............................................................................23

*Ultramares Corp. v. Touche*,
   174 N.E. 441 (N.Y. 1931) ...................................................................................24

*Water Street Leasehold L.L.C. v. Deloitte & Touche L.L.P.*,
   796 N.Y.S.2d 598 (App. Div. 2005) ...............................................................27, 28

*Whetstone Candy Co. v. Kraft Foods, Inc.*,
   351 F.3d 1067 (11th Cir. 2003) .....................................................................13, 14

*White v. BDO Seidman, L.L.P.*,
   549 S.E.2d 490 (Ga. Ct. App. 2001) .............................................................26-27

*William Iselin & Co. v. Landau*,
   522 N.E.2d 21 (N.Y. 1988) ...........................................................................25, 26

*Williams v. Brandt*,
   672 F. Supp. 507 (S.D. Fla. 1987) .................................................................15-16

*Young v. FDIC*,
   103 F.3d 1180 (4th Cir. 1997) .......................................................................11, 15

*Yung v. Lee*,
   No. 00 Civ. 3965 (DAB), 2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002),
   *aff'd*, 160 Fed. Appx. 37 (2d Cir. 2005) ..............................................................31

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ...............................................................17, 18, 19

**Statutes & Rules**

Securities Exchange Act § 10(b), 15 U.S.C. §78j(b) .................................................................2, 16

Securities Exchange Act § 21D(b)(2), 15 U.S.C. § 78u-4(b)(2)...............................................16

Securities Exchange Act § 27, 15 U.S.C. § 78aa .........................................................................6

Rule 10b-5, 17 C.F.R. § 240.10b-5 ...........................................................................................20

Fed. R. Civ. P. 10(c) ...................................................................................................................4

Fed. R. Civ. P. 12(b) ...................................................................................................................1

Fed. R. Civ. P. 44.1 ...................................................................................................................13

Fla. Stat. § 48.193(1)...........................................................................................................22-23

Fla. Stat. § 48.193(2)................................................................................................................22

**Other Authorities**

Restatement (Second) of Torts § 552.............................................................................24, 26, 27

14D Wright & Miller, *Federal Practice and Procedure* § 3828.3 (3d ed. 2007).........................30

PricewaterhouseCoopers ("PwC Ireland") hereby moves to dismiss the Consolidated Amended Class Action Complaint ("Complaint") pursuant to Rule 12(b) of the Federal Rules of Civil Procedure or, in the alternative, on grounds of *forum non conveniens*, and submits this memorandum of law and the Declarations of Gerard Hogan ("Hogan Decl.") (D.E. 112), Vincent MacMahon ("MacMahon Decl.") (D.E. 113), and Ken Owens ("Owens Decl.") (filed herewith) in support thereof.[1]   In support of this Motion, PwC Ireland states as follows:

## MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

Plaintiffs are foreigners who allegedly purchased shares in Optimal Multiadvisors Ltd., Strategic US Equity Series ("Optimal SUS"), an investment fund organized under the laws of The Bahamas and administered in Ireland.  (Compl. ¶¶ 5, 34.)  Optimal SUS was not open to U.S. investors.  Its prospectus specifically prohibited investment by U.S. citizens or residents. (Compl. Ex. 12, at 3; *see also id.* at 16-17.)  Optimal SUS placed the money for investment with Bernard Madoff and Bernard L. Madoff Investment Securities LLC (collectively, "Madoff"), and Madoff stole the money.  In this action, however, Plaintiffs are not suing Madoff.  This lawsuit is about Optimal SUS (the "Fund").[2]   Plaintiffs are suing the Fund's Swiss investment manager, the Spanish bank that owns the investment manager and its U.S. subsidiary, the Fund's directors, the Fund's Irish administrator and custodian, the Fund's Irish auditor (PwC Ireland) and three separate PwC entities.

---

[1] In accordance with the Court's November 5, 2009 Order (D.E. 162), PwC Ireland also submits, together with certain other Defendants, the Joint Motion To Dismiss the Consolidated Amended Class Action Complaint for Lack of Extraterritorial Application of the Securities Exchange Act and Memorandum of Law in Support Thereof.

[2] Plaintiffs allege that they purchased shares in one or more of four funds.  However, they state in their Complaint that "[t]he PwC Defendants are only being sued in connection with the audit of Optimal SUS".  (Compl. ¶ 53.)  Therefore, in this motion PwC Ireland discusses only the allegations relating to Optimal SUS, and not the three other funds on which PwC Ireland is not being sued.

PwC Ireland did not audit Madoff.  Rather, PwC Ireland audited Optimal SUS's financial statements.  PwC Ireland, an Irish partnership registered as accountants and auditors in Ireland, rendered its audits opinions on Optimal SUS in Ireland.  Plaintiffs fail to state a claim against PwC Ireland and, even if they could, the claims would not belong in a U.S. court.

*First*, PwC Ireland is not subject to personal jurisdiction in the United States. Although Plaintiffs have amended their complaint to include information PwC Ireland provided in its jurisdictional discovery responses, the fact remains that PwC Ireland lacks the continuous and systematic business contacts required for general jurisdiction, as well as the purposefully directed, claims-related contacts required for specific jurisdiction.  Plaintiffs' allegations of PwC Ireland's sporadic, incidental contacts with the United States cannot establish general jurisdiction over PwC Ireland.  Similarly, Plaintiffs' allegations that PwC Ireland, acting from Ireland, occasionally communicated with and received information from people in the United States relating to Madoff does not establish that PwC Ireland purposefully availed itself of the privileges of conducting business in the United States as required for specific jurisdiction. Similarly, Plaintiffs' theory that this Court has personal jurisdiction over PwC Ireland because of the actions of PricewaterhouseCoopers Bermuda ("PwC Bermuda") or PricewaterhouseCoopers LLP ("PwC U.S.") fails because PwC Bermuda and PwC U.S. are separate legal entities and neither is or ever was PwC Ireland's agent.  (*See infra* Part I.)

*Second*, Plaintiffs' federal securities claim against PwC Ireland should be dismissed because Plaintiffs fail to state a claim against PwC Ireland under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act").  As set forth in a separate joint brief with other defendants, the Exchange Act does not reach the extraterritorial conduct alleged in the complaint.  In addition, as set forth in this brief, Plaintiffs fail to plead facts giving rise to an inference of scienter.  Plaintiffs' allegations that PwC Ireland ignored red flags fail because Plaintiffs acknowledge that many of the red flags were disclosed to them and Plaintiffs fail to allege that PwC Ireland was aware of the other red flags.  Moreover, as Optimal SUS shares were not publicly traded, Plaintiffs must prove actual reliance by each named Plaintiff, and eventually by each putative class member, and Plaintiffs fail to allege any facts to support their

2

conclusory assertion that they relied on any statements by PwC Ireland before investing in Optimal SUS. (*See infra* Part II.)

*Third*, once the Exchange Act claim is dismissed, Plaintiffs' common-law claims against PwC Ireland must be dismissed for lack of personal jurisdiction in Florida. Plaintiffs have not pleaded that PwC Ireland had any contact whatsoever with Florida. (*See infra* Part III.)

*Fourth*, assuming *arguendo* that (as Plaintiffs contend) either Florida or New York law applies to Plaintiffs' common-law claims, Plaintiffs have failed to state a common-law claim against PwC Ireland. Plaintiffs have failed to allege facts to establish that PwC Ireland owed a duty to Plaintiffs or that Plaintiffs relied upon PwC Ireland's allegedly negligently performed audits of Optimal SUS. In the absence of such a duty and actual reliance, PwC Ireland cannot be liable to Plaintiffs in negligence. Plaintiffs' claim for gross negligence also fails because gross negligence is not a separate cause of action against auditors under either New York or Florida law. Finally, Plaintiffs' claim for unjust enrichment fails because Plaintiffs have failed to allege that they bestowed a benefit directly on PwC Ireland and because Plaintiffs have an adequate remedy at law. (*See infra* Part IV.)

*Fifth*, to the extent that Plaintiffs' claims survive motions to dismiss on the merits, the claims do not belong here because the United States is not a convenient forum. None of the Plaintiffs is a U.S. citizen or resident. Likewise, almost all the defendants are foreign. This suit, which relates to the management, administration, custody and audit of the Fund, would be more conveniently heard in Ireland, where a fully adequate alternative forum is available, and most of the relevant evidence is located. Indeed, Ireland has a strong public interest in adjudicating this action, as it regulates PwC Ireland as well as the custodian and the administrator who carried out the day-to-day functions of the Optimal SUS fund. As Plaintiffs have an adequate alternative forum in Ireland, this suit should be dismissed for *forum non conveniens*. (*See infra* Part V.)

## FACTUAL BACKGROUND

On October 21, 2009, the named plaintiffs from *Inversiones Mar Octava Limitada v. Banco Santander*, No. 09 CV 20215 (S.D. Fla. Jan. 26, 2009), and from *Puado v. Banco Santander*, No. 09 CV 20934 (S.D. Fla. Apr. 9, 2009), together with a new named plaintiff, filed

3

the Complaint.  The Complaint does not name any of the six plaintiffs who brought *Santos v. Banco Santander*, No. 09 CV 2838 (S.D.N.Y. Mar. 25, 2009).  The Complaint names all of the defendants named in the *Mar Octava* action.  Plaintiffs have also added three additional defendants—PwC U.S., PwC Bermuda and PricewaterhouseCoopers International Limited ("PwC IL")—in an apparent effort to bolster their case for jurisdiction in the United States.

Plaintiff Inversiones Mar Octava Limitada ("Mar Octava") is a Chilean company; Plaintiff Marcelo Guillermo Testa is a resident of Argentina; International Harvester Limited and San Javier International Limited are British Virgin Islands companies; Juan Gonzalo Perez Valdez is a resident of Mexico; and Antonio Atencia Puado is a resident of Spain.[3]  (Compl. ¶¶ 35-41.)  Plaintiffs allege that they purchased shares in Optimal SUS and seek to represent a class of persons who purchased shares in Optimal SUS from January 27, 2004 to December 10, 2008, or who owned shares of Optimal SUS on December 10, 2008.  (*Id.* ¶ 34.)  Optimal SUS provided its capital to Madoff, who held the fund's assets and purported to act as a broker-dealer for stocks, U.S. Treasury and options transactions.  (*Id.* ¶¶ 28, 213.)  Optimal SUS is, in effect, a sub-fund of Optimal Multiadvisors, Ltd., an investment fund organized under the laws of the Commonwealth of The Bahamas.  (*Id.* ¶¶ 5, 56.)

Plaintiffs purchased shares in Optimal SUS pursuant to an Explanatory Memorandum.[4]  (Compl. ¶¶ 5, 155; Exs. 8-13.)  The Explanatory Memorandum provided that investors in Optimal SUS could not be U.S. residents or citizens and could not purchase shares in the United States:

> "PARTICIPATING SHARES OF THE FUND MAY NOT BE OFFERED, SOLD, TRANSFERRED OR DELIVERED DIRECTLY OR INDIRECTLY, IN THE UNITED STATES OR TO US PERSONS.  PARTICIPATING SHARES

---

[3] On April 17, 2009, the Court ordered the appointment of three Lead Plaintiffs.  (D.E. 42.) One is Mar Octava.  The other two, International Harvester Ltd. and San Javier International Ltd., moved to intervene on May 8, 2009.  (D.E. 62.)  The Court granted their motion to intervene on June 4, 2009.  (D.E. 93.)

[4] The Explanatory Memoranda attached to the Complaint as Exhibits 8 through 13 are treated as part of the Complaint.  *See* Fed. R. Civ. P. 10(c).

THAT ARE ACQUIRED BY US PERSONS MAY BE MANDATORY [*sic*]
REDEEMED BY THE FUND." (Compl. Ex. 12, at 3; *see also id.* at 16-17.)

All members of the putative class must, therefore, be foreign.  The Explanatory Memorandum
stated further that Optimal SUS was not registered under the Investment Company Act of 1940,
and its shares were not registered under the Securities Act of 1933.  (*Id.* at 3.)

Plaintiffs allege that Optimal SUS was marketed principally by Banco Santander,
S.A. ("Santander") and its affiliates, including Banco Santander International ("BSI").
(Compl. ¶ 6.)  Santander is organized under the laws of Spain, and its wholly-owned subsidiary
BSI has offices in the United States.  (*Id.* ¶¶ 42-43.)  The investment manager for the Optimal
SUS fund was Optimal Investment Services S.A. ("OIS"), which is organized under the laws of
Switzerland and based in Geneva.  (*Id.* ¶ 44.)  The Fund's administrator and custodian were both
subsidiaries of HSBC Holdings plc, a British bank holding company.  The administrator, which
carried out the day-to-day operations of Optimal SUS, was HSBC Securities Services (Ireland)
Ltd. ("HSSI"), and the custodian was HSBC Institutional Trust Services (Ireland) Ltd. ("HTIE").
(*Id.* ¶¶ 54-55.)  Both HSSI and HTIE are located in Dublin, Ireland.  (Compl. Ex. 12, at 1.)  HSSI
and HTIE are each licensed by the Irish Financial Regulator.  (Hogan Decl. ¶ 19.)  HSSI is also
licensed by the Securities Commission of The Bahamas as a mutual fund administrator.  (Compl.
Ex. 12, at 12.)

PwC Ireland is organized under Irish partnership law.  (MacMahon Decl. ¶ 4.)
PwC Ireland is registered as an auditor with the Chartered Accountants Regulatory Board which,
in turn, is supervised by the Irish Auditing and Accounting Supervisory Authority, which
oversees the regulation of accountancy bodies and auditors of Irish companies.  (*Id.*)  PwC
Ireland has seven offices, all located in Ireland.  (*Id.* ¶ 6.)  PwC Ireland's Dublin office served as
Optimal SUS's auditor, and issued audit reports on the Fund's annual financial statements.
(Compl. ¶ 50; Ex. 12, at 1.)  PwC Ireland is a member of the international PwC network of firms.
(MacMahon Decl. ¶ 8.)

PwC U.S. and PwC Bermuda are also member firms of the PwC network.  PwC
IL is the coordinating entity that handles relationships among the member firms of the PwC

5

network.  Client services are provided by member firms, not by PwC IL.  PwC Ireland, PwC U.S., PwC Bermuda and PwC IL are all separate legal entities.  PwC U.S. is a limited liability partnership organized under Delaware law.   PwC Bermuda is organized under the laws of Bermuda.  PwC IL is a private company limited by guarantee organized under the laws of England.  Each of PwC Ireland, PwC U.S., PwC Bermuda and PwC IL is separately owned and managed, and none of the entities controls another.  (*Id.*)

PwC Ireland does not maintain an office in the United States.  (*Id.* ¶ 9.)  It does not have a bank account or own real property in the United States.  (*Id.* ¶ 13.)  PwC Ireland's partners are not licensed as public accountants anywhere in the United States, and PwC Ireland is not registered to conduct business anywhere in the United States.  (*Id.* ¶¶ 10-11.)  PwC Ireland does not pay taxes in the United States.  (*Id.* ¶ 12.)

PwC Ireland audited the 2002 through 2007 annual financial statements of Optimal SUS in Ireland and drafted and signed its audit opinions in Ireland.  (Owens Decl. ¶ 4.)  Each year, Optimal SUS issued an Annual Report, which included the financial statements audited by PwC Ireland.  Plaintiffs have attached to their Complaint the 2007 report, dated April 23, 2008.  (*See* Compl. Ex. 27.)  The Independent Auditors' Report on the Optimal SUS financial statements was signed by PwC Ireland in Dublin.  (*Id.* at 3.)  In connection with the audits of Optimal SUS, no one from PwC Ireland ever visited Madoff or met with anyone from his firm.  (Owens Decl. ¶ 4.)

## ARGUMENT

## I.   PWC IRELAND IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE UNITED STATES.

This Court lacks both general and specific personal jurisdiction over PwC Ireland.  In a case brought under the Exchange Act, which authorizes worldwide service of process, *see* 15 U.S.C. § 78aa, the Fifth Amendment's Due Process clause governs the due process analysis, and personal jurisdiction is based on the defendant's contacts with the United States as a whole.  *SEC v. Carrillo*, 115 F.3d 1540, 1543-44 (11th Cir. 1997).  Due process requires that "a non-resident defendant have certain minimum contacts with the forum, so that the exercise of

jurisdiction does not offend traditional notions of fair play and substantial justice". *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). The quality and quantity of the contacts necessary for the exercise of jurisdiction depends on whether jurisdiction is specific or general. *Id.* In this case, PwC Ireland does not have sufficient contacts to sustain either specific or general jurisdiction.[5]

Exercising personal jurisdiction over PwC Ireland would violate the Due Process Clause. *First*, PwC Ireland has no continuous and systematic business contacts with the United States. It is therefore not subject to general jurisdiction. (*See infra* Part I.A.) *Second*, PwC Ireland's audit reports for Optimal SUS were prepared in Ireland, and Plaintiffs do not allege "minimum contacts" with the United States sufficient to create specific jurisdiction for these claims. (*See infra* Part I.B.) *Third*, subjecting PwC Ireland to suit in the United States would be contrary to fair play and substantial justice. (*See infra* Part I.C.)

> **A.      PwC Ireland Lacks the Minimum Contacts Necessary for General Jurisdiction.**

Plaintiffs fail to allege contacts that would allow the exercise of general jurisdiction over PwC Ireland. The due process requirements for general jurisdiction are "stringent", and "require a showing of continuous and systematic general business contacts between the defendant and the forum". *Nippon Credit Bank Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (quoting *Consol. Dev. Corp.*, 216 F.3d at 1292).

In determining "continuous and systematic general business contacts", courts look to whether the defendant has an office in the jurisdiction and is licensed to do business there. Thus, in *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057

---

[5] It is Plaintiffs' burden to "plead sufficient material facts to establish the basis for exercise" of personal jurisdiction over PwC Ireland. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). PwC Ireland may rebut the allegations with declarations or affidavits or other competent evidence. *Id.* Here, PwC Ireland submits that, even after the opportunity for jurisdictional discovery, Plaintiffs have failed to plead a *prima facie* case of personal jurisdiction over PwC Ireland. As discussed below, PwC Ireland also submits two declarations:  the MacMahon Declaration on general jurisdiction and the Owens Declaration on specific jurisdiction.

(11th Cir. 1986), the Eleventh Circuit held that there was no general jurisdiction where the defendant corporation did not "ha[ve] an office or employees" in the forum, did not "solicit business" there, did not "provide services or close sales" there, did not "sell products to … purchasers" in the forum, and was not licensed to do business there. Indeed, the Eleventh Circuit has observed that "[g]eneral jurisdiction has been found lacking even where a company had employees, agencies and salespeople regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business and derived more than 26% of its income from the forum". *Associated Trans. Line, Inc. v. Productos Fitosanitarios Proficol el Carmen. S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999); *see also Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-18 (1984); *Consol. Dev. Corp.*, 216 F.3d at 1292.

PwC Ireland has no "continuous or systematic" business contacts with the United States. As averred in an accompanying declaration, PwC Ireland (1) has never been registered to conduct business in the United States; (2) has never maintained an office in the United States; (3) has never maintained a bank account or owned real property in the United States; (4) has never paid taxes in the United States; and (5) is not licensed as public accountants anywhere in the United States. (MacMahon Decl. ¶¶ 9-14.)

Plaintiffs' allegation that PwC Ireland has clients and provides services in the United States (Compl. ¶ 345(a)) does not establish general jurisdiction. In *Snow v. DirectTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006), the Eleventh Circuit found no continuous or systematic business contacts in Florida for a Washington law firm where the firm provided professional services for Florida clients, including representing four Florida clients in Washington courts, and occasionally (in at least seven cases) appeared as counsel of record in Florida courts, but the firm lacked a physical presence in Florida and had no attorneys licensed here. In this case, PwC Ireland has never maintained an office in the United States, and the firm and its partners are not licensed in the United States. (MacMahon Decl. ¶¶ 9-11.)

Receipt of payments from clients in the United States (Compl. ¶ 345(b)) likewise fails to establish continuous or systematic business contacts. *See Snow*, 450 F.3d at 1319 (no general jurisdiction where Florida clients "generated less than one percent of the law firm's total

8

revenue"); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (no "doing business" jurisdiction under Florida's long-arm where California accounting firm received approximately 5% of revenues from Florida clients); *Consol. Dev. Corp.*, 216 F.3d at 1292-93 (no general jurisdiction in the U.S. where foreign corporation twice issued bonds in the U.S. and received proceeds from U.S. purchasers). Nothing in the Complaint suggests that PwC Ireland earns sizeable revenue or has a substantial client base in the United States.[6] Therefore, any contacts that PwC Ireland has with the United States based on payments from U.S. clients is at best "limited" and "not the sort of general systematic business contacts required to sustain the assertion of general personal jurisdiction". *Id.* at 1292.

Plaintiffs' assertion that staff of PwC Ireland visited the offices of PwC U.S. and vice versa, unrelated to the Optimal SUS audits (Compl. ¶ 345(c)-(f)), is also insufficient to establish the requisite continuous or systematic business contacts for general jurisdiction. In *Helicopteros Nacionales*, the U.S. Supreme Court held that a foreign corporation's decision to send personnel to the United States for training did not create general personal jurisdiction over the corporation in the forum. 466 U.S. at 417-18. Likewise, in a class action under the Exchange Act, the Second Circuit determined that, even if they were connected to the solicitation of business, such visits "would hardly constitute 'doing business' in the sense in which that concept has been developed". *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 999 (2d Cir. 1975).

The allegation that PwC Ireland "communicated" from Ireland with OIS's offices in New York and received written trade confirmations sent from Madoff in New York (Compl. ¶ 345(g)-(h)), also fails to establish continuous or systematic business contacts. In *Snow*, the Eleventh Circuit concluded that there were "no 'continuous and systematic' contacts sufficient to subject [the defendant] to general jurisdiction in Florida", despite the fact that the defendant

---

[6] In its responses to Plaintiffs' interrogatories on personal jurisdiction, PwC Ireland averred that only two percent of its total billings in 2008 and 2009 came from services provided in Ireland to U.S.-based clients, and of that two percent only one one-hundredth (or 0.02 percent of overall revenues) came from services provided in Ireland to Florida-based clients.

9

"conducted pre-litigation negotiations through telephone communications, electronic mail, and traditional mail with many Florida residents". 450 F.3d at 1319; *see also Horizon Aggressive Growth*, 421 F.3d at 1165, 1167-68 (California accounting firm was not "conducting business" in Florida where it communicated with its Florida client by telephone, faxes, e-mail and regular mail). The isolated communications at issue in this case—whether by telephone, fax, e-mail or traditional mail—are insufficient in both quality and quantity to subject a foreign defendant to general personal jurisdiction in the United States.

Accordingly, the Complaint fails to plead contacts sufficient to establish general jurisdiction over PwC Ireland. The contacts enumerated in paragraph 345 do not come close to the required "continuous or systematic general business contacts".

B. **PwC Ireland Lacks the Minimum Contacts Necessary for Specific Jurisdiction.**

Nor is PwC Ireland subject to specific jurisdiction. The Eleventh Circuit uses a three-part analysis to determine whether sufficient contacts exist for specific jurisdiction: the defendant's contacts (1) "must be related to the plaintiff's cause of action or have given rise to it"; (2) "must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum"; and (3) must be such that the defendant "should reasonably anticipate being haled into court there". *Carrillo*, 115 F.3d at 1542 (citation omitted). Foreseeability is the touchstone of the inquiry, and the defendant must have "fair warning that it could be subject to suit in the United States based on the harm caused". *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009).

1. **PwC Ireland did not purposefully avail itself of the privilege of conducting activities in the United States related to Plaintiffs' claims.**

Plaintiffs' allegations regarding PwC Ireland's contacts with the United States fall far short of alleging the purposeful availment necessary for specific jurisdiction. Plaintiffs allege that PwC Ireland received a written confirmation letter from Madoff each year, and in some years a few other documents sent from the United States to Ireland concerning Madoff (Compl. ¶ 343(d), (g)), and that over the years PwC Ireland's personnel in Ireland had a number of e-mail

and telephonic communications with people from OIS's New York office and from PwC U.S. (*id.* ¶ 343(e)-(f)).[7]

An auditor's receipt of information from the United States, for use in an audit conducted abroad, does not create personal jurisdiction over the auditor in the United States. The Eleventh Circuit held that an audit firm was not subject to specific jurisdiction in Florida where the auditors, in their California offices, conducted audits of a Florida company's financial statements and obtained that company's financial records by Internet connection, telephone, fax, e-mail and regular mail with their Florida client. *Horizon Aggressive Growth*, 421 F.3d at 1165, 1167-68.[8]  Here, the facts for lack of jurisdiction are even stronger.  PwC Ireland did not audit Madoff.  Rather, PwC Ireland, in Dublin, audited the financial statements of Optimal SUS, based on accounts prepared by the administrator, HSSI, in Dublin.  (*See* Compl. ¶ 54; Ex. 12, at 12.) Contacts by PwC Ireland with third parties (Madoff, OIS and PwC U.S.) in the United States for PwC Ireland to obtain information for the Irish audit of Optimal SUS do not constitute purposeful availment that would subject PwC Ireland to specific jurisdiction in the United States. *See Young v. FDIC*, 103 F.3d 1180, 1191-92 (4th Cir. 1997) (no jurisdiction over foreign auditor based on its use in audit of a fraudulent confirmation from a South Carolina bank of a nonexistent bank account balance); *Able Fund, Inc. v. KPMG Accountants NV*, 247 Fed. Appx. 504, 507 (5th Cir. 2007) (no jurisdiction over KPMG Netherlands Antilles based on contacts "made to collect information for use in the audit").

In addition, the handful of contacts with the United States that Plaintiffs allege— in connection to six years of audits—is too insignificant to create personal jurisdiction.  As the

---

[7] Plaintiffs' allegation that in relation to two of the audit years PwC Ireland had telephone conversations with people at PwC Bermuda (Compl. ¶ 343(c)) is irrelevant because for those calls there is no allegation of contacts with the United States at all.

[8] In *Horizon Aggressive Growth*, the court held that there were sufficient contacts for jurisdiction for a claim based on the allegation that one of the California auditors made fraudulent misrepresentations to the plaintiff in an interstate telephone call—*i.e.*, the contact at issue was itself the commission of the tort.  421 F.3d at 1168-69.  There are no such allegations against PwC Ireland here.

Eleventh Circuit has explained, "[C]ontacts must be viewed both quantitatively and qualitatively." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). The contacts here are qualitatively insufficient because purposeful availment "generally requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state". *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (quotation omitted). Here, no one from PwC Ireland came to the United States in connection with the Optimal SUS audit. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (denying specific jurisdiction where there was limited telephonic contact and no visit to the forum). Remote communications, even when far more extensive than alleged here, do not constitute purposeful availment. *See, e.g., Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1032, 1034-35 (11th Cir. 1991) (two phone calls between foreign defendant and Florida resident, during which the alleged misrepresentations took place, were insufficient for exercise of jurisdiction under the Due Process Clause); *Gulf Atl. Transp. Co. v. Offshore Tugs, Inc.*, 740 F. Supp. 823, 830-31 (M.D. Fla. 1990) (non-resident defendants' contacts were constitutionally insufficient where they made phone calls and sent faxes to Florida resident, including an offer for the provision of services outside Florida; sent daily reports to Florida; contacted plaintiff in Florida via radio; and were allegedly responsible for a loss with a financial impact in Florida).

> 2. **PwC Bermuda and PwC U.S. were not agents of PwC Ireland, and their alleged conduct in the United States related to Plaintiffs' claims cannot give rise to personal jurisdiction over PwC Ireland.**

Having failed to plead sufficient contacts between PwC Ireland and the United States, Plaintiffs attempt to establish personal jurisdiction over PwC Ireland through the actions of PwC Bermuda and PwC U.S. in the United States. Plaintiffs allege that PwC Bermuda and PwC U.S. met with Madoff in New York on two occasions (in 2004 and 2006), and contend that in doing so they acted as PwC Ireland's agents. (Compl. ¶¶ 343(a)-(b), 365-367.)

Plaintiffs have not pleaded facts sufficient to create actual or apparent agency. *See Snow*, 450 F.3d at 1318 ("vague and conclusory allegations" of agency were "insufficient to

establish a prima facie case of personal jurisdiction"). In either case, the burden of proving agency is on the party who asserts it. *See Enic, PLC v. F.F. South & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004).[9] Actual agency requires: "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent". *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003). Plaintiffs have pleaded none of these elements. The allegation that PwC Bermuda and PwC U.S. met with Madoff "with the specific purpose of providing information [to] PwC Ireland" does not establish acknowledgment or acceptance of an agency relationship, let alone that PwC Ireland controlled the actions of PwC Bermuda and PwC U.S. *See Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1356 (S.D. Fla. 2000) (quotation omitted) (the agent must "manifest[] no separate corporate interest of its own and function[] solely to achieve the purposes of the dominant corporation").

Apparent agency requires that "1) the alleged principal make[] some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably act on such belief to his detriment". *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005). Plaintiffs have not pleaded any of these elements either. Indeed, Plaintiffs do not allege they had any knowledge of conduct by PwC Bermuda and PwC U.S. related to Optimal SUS, and therefore cannot assert that they believed that those firms had authority to act for PwC Ireland. *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009).

Moreover, even if Plaintiffs had adequately pleaded agency in the Complaint, Plaintiffs' claim of an agency relationship would fail in fact. A defendant may rely on affidavits

---

[9] PwC Ireland believes that Irish law governs whether PwC U.S. and PwC Bermuda were its agents for purposes of the Optimal SUS audit. If the Court would find it helpful, PwC Ireland can submit a declaration on Irish agency law, pursuant to Rule 44.1. *See* Fed. R. Civ. P. 44.1. For ease, however, PwC Ireland relies on general principles of agency law, as found in Florida law, for purposes of this motion only.

to rebut the assertion of an agency relationship on a motion to dismiss for lack of personal jurisdiction. *See Snow*, 450 F.3d at 1318; *Meterlogic*, 126 F. Supp. 2d at 1356.  The Declaration of Ken Owens, the PwC Ireland engagement partner for the audit of the 2002 through 2006 annual financial statements of Optimal SUS, establishes there was no agency relationship between PwC Ireland on the one hand and PwC Bermuda or PwC U.S. on the other.

As Owens explains, PwC Ireland did not engage PwC Bermuda or PwC U.S. to act as its agent in visiting Madoff.  (Owens Decl. ¶ 5.)  Rather, PwC Bermuda, with the assistance of PwC U.S., visited Madoff in a number of years in connection with PwC Bermuda's audit of a fund unrelated to the Optimal funds.  (*Id.*)  PwC Ireland did not purchase a report of the meeting in all years, but when PwC Bermuda inquired whether PwC Ireland was interested in receiving such a report in exchange for reimbursing PwC Bermuda for a portion of the costs of the meeting, PwC Ireland agreed to purchase a copy of the report in 2004 and again in 2006.  (*Id.* ¶¶ 5, 10.)  PwC Ireland did not have input into the scope of the meeting that PwC Bermuda and PwC U.S. had with Madoff.  (*Id.* ¶¶ 6, 11.)  PwC Ireland did not request that PwC Bermuda or PwC U.S. ask Madoff any questions on its behalf.  (*Id.*)  PwC Ireland had no control over PwC Bermuda or PwC U.S.  (*Id.* ¶¶ 7, 12.)  PwC Ireland did not authorize PwC Bermuda or PwC U.S. to bind PwC Ireland in any way.  (*Id.*)  PwC Ireland did not authorize PwC Bermuda or PwC U.S. to hold itself out as an agent of PwC Ireland, nor did PwC Ireland hold PwC Bermuda or PwC U.S. out as its agent.  (*Id.*)

The Owens Declaration establishes that there was no agency relationship.  *See Whetstone*, 351 F.3d at 1077; *Meterlogic*, 126 F. Supp. 2d at 1354-57.  Accordingly, PwC Ireland cannot be subject to personal jurisdiction based on the alleged actions of PwC Bermuda and PwC U.S.

### 3.   PwC Ireland had no reason to anticipate being haled into a U.S. court based on its audits of the Ireland-based Optimal SUS fund.

PwC Ireland is organized under Irish partnership law, and is registered as auditors in Ireland.  (MacMahon Decl. ¶ 4.)  Its audit reports for Optimal SUS were prepared by PwC Ireland's Dublin office.  (Compl. ¶ 202; Ex. 27, at 3.)  As reflected on the face of the

␣␣␣␣␣␣␣␣␣

el

Explanatory Memoranda attached to the Complaint, Optimal Multiadvisors, Ltd. and Optimal SUS are organized under the laws of The Bahamas, and the investment manager, administrator, custodian and attorneys are all foreign entities.  (Compl. Ex. 12, at 1-2.)  The fund was open only to foreign investors.  (*Id.* at 3, 16-17.)  Given these undisputed facts, PwC Ireland could not reasonably have expected to be haled into court in the United States based on its audit work for Optimal SUS.

As the Eleventh Circuit has said, "Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is *not* the ability to see that the acts of a third person may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum."  *Madara v. Hall*, 916 F.2d 1510, 1516-17 (11th Cir. 1990).  Because the fund, all the investors, and the services provided by PwC Ireland in this case were outside the United States, PwC Ireland could not reasonably have foreseen that its acts in Ireland would have an effect in the United States.  That alone makes the exercise of specific jurisdiction over PwC Ireland inappropriate.

C.  **The Exercise of Jurisdiction Over PwC Ireland Would Be Contrary to Fair Play and Substantial Justice.**

Even if there were sufficient contacts for either general or specific jurisdiction (which there are not), the exercise of personal jurisdiction over PwC Ireland would still violate the concept of "fair play and substantial justice".  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 116 (1987).  To conduct this due process inquiry, courts examine (1) "the burden on the defendant"; (2) "the interests of the forum"; and (3) "the plaintiff's interest in obtaining relief".  *Carrillo*, 115 F.3d at 1547 (citation omitted).

Here, all three factors weigh strongly against jurisdiction.  PwC Ireland would be greatly burdened by having to defend itself four thousand miles from home, in a jurisdiction in which it has no presence.  *See Young*, 103 F.3d at 1192.  Moreover, "[t]he unique burdens placed on one who must defend oneself in a foreign legal system should have significant weight".  *Asahi*, 480 U.S. at 114.  The case at hand is so "predominantly foreign" that a U.S. court could have little interest in adjudicating it, *Williams v. Brandt*, 672 F. Supp. 507, 508 (S.D. Fla. 1987)

(quotation omitted), and the United States' "legitimate interests in the dispute have considerably diminished" because Plaintiffs are foreign. *Asahi*, 480 U.S. at 114. Finally, nothing prevents Plaintiffs from obtaining relief by pursuing their claims in a more convenient forum, such as Ireland. (*See infra* Part V.)

## II.    PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST PWC IRELAND.

In a private action under Section 10(b) of the Exchange Act a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation". *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). The only misrepresentations that Plaintiffs allege against PwC Ireland are in its audit reports on Optimal SUS: (i) PwC Ireland's statement that it conducted the audits in accordance with International Standards on Auditing, and (ii) PwC Ireland's "opinion" that "the accompanying financial statements present fairly, in all material respects, the financial position of the Series as of December 31, 2007, its financial performance and its cash flows for the year then ended in accordance with International Financial Reporting Standards". (Compl. ¶ 667; Ex. 27, at 3.)

In a separate brief filed with the Santander Defendants, PwC Ireland demonstrates that Section 10(b) does not apply to the extraterritorial conduct alleged in the Complaint. In addition, Plaintiffs fail to plead facts sufficient to establish two elements of their Section 10(b) claim against PwC Ireland: scienter and reliance.

### A.    Plaintiffs Fail To Plead Facts Creating a Strong Inference of Scienter by PwC Ireland.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes heightened pleading requirements. Complaints in private actions under Section 10(b) must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind". 15 U.S.C. § 78u-4(b)(2). In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court held that, in evaluating the sufficiency of a plaintiff's

16

scienter pleading on a motion to dismiss, courts must consider "plausible non-culpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff". *Id.* at 323-24. The plaintiff's inference of scienter must be more than "reasonable" or "permissible". *Id.* at 324. "A complaint will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

Scienter requires either intent to defraud or severe recklessness.

> "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted).

To plead a securities fraud claims against auditors, plaintiffs must offer specific allegations to support the "strong inference that the audit was so deficient that it amounted to *no audit at all*". *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1283 (M.D. Fla. 2009) (quotation omitted; emphasis added). When scienter is not established on the face of the complaint, claims against auditors are dismissed. *See, e.g.*, *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265-67 (11th Cir. 2006); *Ziemba*, 256 F.3d at 1213; *Goodman Life Income Trust*, 595 F. Supp. 2d at 1283; *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1362-64 (S.D. Fla. 2005); *Holmes v. Baker*, 166 F. Supp. 2d 1362, 1380 (S.D. Fla. 2001).

The Complaint here falls far short of alleging scienter as to PwC Ireland. Plaintiffs attribute scienter to PwC Ireland based on its alleged failure to comply with professional auditing standards and disregard for so-called "red flags".

Failure to comply with auditing standards. Plaintiffs allege that PwC Ireland's audit "amounted to no audit at all" because PwC Ireland violated the International Standards on Auditing ("ISA"). (*See* Compl. ¶¶ 214-264.)[10] In particular, Plaintiffs identify a number of audit

---

[10] Although PwC Ireland moves to dismiss the Complaint as a matter of law, PwC Ireland notes that the Complaint thoroughly mischaracterizes a number of the applicable auditing

procedures—such as confirming Madoff's trades with his counterparties or communicating with Madoff's auditors—that Plaintiffs assert (with hindsight) would have led PwC Ireland to uncover Madoff's fraud. (*See id.* ¶¶ 28-29, 237, 242.) But mere allegations of violations of auditing standards do not support an inference that the auditor acted with scienter. *See Garfield*, 466 F.3d at 1267-69; *Ziemba*, 256 F.3d at 1208-10. "Nor may Plaintiffs establish scienter by alleging that the auditor would have discovered the fraud had it not violated GAAS." *Spear & Jackson*, 399 F. Supp. 2d at 1363; *accord In re Eagle Bldg. Tech., Inc. Sec. Litig.*, 319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004). Violations of GAAS establish nothing more than that the auditor acted negligently, *Spear & Jackson*, 399 F. Supp. 2d at 1363, not with the "severe recklessness" required for scienter, *Ziemba*, 256 F.3d at 1202.

       <u>Red flags.</u> Plaintiffs' references to "red flags" also fail to establish scienter. The so-called "red flags" Plaintiffs allege are: Madoff's custody of equity securities (Compl. ¶ 281); Madoff's "non-existent counterparties" (*id.* ¶ 282); "the fact that Madoff supposedly held all assets, one-hundred percent, in government securities at the end of each year" (*id.* ¶¶ 283-284); Madoff's unknown auditing firm (*id.* ¶ 285); his secretive operations (*id.* ¶¶ 286-287); Madoff's

---

standards. First, ISAs 200, 240 and 315 (*see* Compl. ¶¶ 217-224) have nothing to do with third parties such as Madoff. PwC Ireland audited Optimal SUS, not Madoff. These ISAs concern an auditor's professional skepticism toward assertions *by the auditor's client* (here, management and directors of Optimal Multiadvisors, Ltd.), and the potential for fraud or misstatement *by the client* (management and directors of Optimal Multiadvisors, Ltd.) in the client's financial statements. Similarly, ISA 505 (*see id.* ¶¶ 235-237) concerns an audit practice of confirming client management assertions with third parties (such as Madoff). It does not require the auditor to undertake second-level confirmations of a third party's assertions with others, such as the third party's banks or counterparties. Plaintiffs also invoke IAPS 1012 and a PwC U.S. internal practice guide (*see id.* ¶¶ 231-234, 238-242), both of which discuss auditing alternative investments, such as derivatives or holdings in hedge funds. But the investments that Madoff purported to hold for Optimal SUS were U.S. Treasuries, with publicly available pricing and values. (*See id.* ¶¶ 203, 256; Ex. 12, at 28.) Finally, Plaintiffs assert incorrectly that Madoff was a "service organization" for Optimal SUS governed by ISA 402, requiring PwC Ireland, among other things, to assess Madoff's auditor, Friehling & Horowitz. (*See* Compl. ¶¶ 225-230.) But ISA 402 applies to organizations that process the client's accounting records, not to broker-dealers such as Madoff. For example, here HSSI was a "service organization" to Optimal SUS because HSSI kept the Optimal SUS books and prepared the financial statements (*Id.* ¶ 54), but Madoff was not.

paper trading records (*id.* ¶ 288); his consistent returns (*id.* ¶ 289); and Madoff's fee structure (*id.* ¶¶ 290-291.)  But, as Plaintiffs themselves acknowledge, a number of these purported "red flags"—including Madoff's custody of equity securities, the 100% year-end holdings of government securities, Madoff's consistent returns and his fee structure—were known to Optimal and were disclosed to investors on the face of the Optimal SUS financial statements. (*See* Compl. ¶¶ 212-213, 256; Ex. 27.)  Indeed, PwC Ireland included in its 2007 audit report what is known as an "emphasis of matter" (*see* ISA 706), which specifically calls the reader's "attention to Note 10 which describes the fact that 100% of the assets of the Series are held with Bernard L. Madoff Investments LLC".  (Compl. Ex. 27, at 3.)  The disclosure to investors of an alleged "red flag" defeats any inference of fraud.  *See Ziemba*, 256 F.3d at 1211.

    The remaining "red flags" are insufficient because Plaintiffs do not allege that any of these facts were known to PwC Ireland.  Rather, Plaintiffs' scienter allegations refer mostly to "Defendants" generically, or to the "Santander Defendants" (*see* Compl. ¶¶ 281-289), without alleging facts known to PwC Ireland.  Nor do Plaintiffs allege that PwC Ireland was aware of the concerns that OIS and other Santander Defendants allegedly had about Madoff.  (*See id.* ¶¶ 65-134.)  When a plaintiff fails to plead facts showing that the red flags were *known to the auditor*, there is no strong inference of scienter.  *See Garfield*, 466 F.3d at 1268-69.  Plaintiffs do not plead anything along the lines that PwC Ireland was "tipped off" and ignored the information, was informed that the CFO was "cooking the books", or received a "letter warning the accounting firm".  *See Ziemba*, 256 F.3d at 1210 (describing cases in which there was an inference of scienter by the auditor).  Moreover, Plaintiffs do not allege that PwC Ireland was aware of OIS and Santander's alleged concerns about Madoff (*see* Compl. ¶¶ 65-90).

    *Tellabs* requires the Court at the pleading stage to decide between competing inferences—plausible nonculpable explanations for PwC Ireland's conduct and inferences favoring Plaintiffs.  551 U.S. at 323-24.  Here, Plaintiffs ask the Court to infer from the fact that PwC Ireland, in auditing the financial statements of Optimal SUS in Ireland, did not uncover the Madoff Ponzi scheme, that PwC Ireland acted with scienter, and its audit amounted to no audit at all.  A more plausible inference is that Madoff was successful in concealing his Ponzi scheme,

"the largest heist in financial history" (Compl. ¶ 1), from numerous parties—including financial regulators in the United States, such as the SEC, as well as investment managers, administrators, custodians and auditors for numerous investment funds throughout the world. Plaintiffs' Section 10(b) claim against PwC Ireland therefore be dismissed.

B.   **Plaintiffs Fail To Allege Reliance on any Statement by PwC Ireland.**

The Section 10(b) claim also fails because Plaintiffs have not sufficiently alleged reliance on PwC Ireland's allegedly misleading statements. Reliance is an essential element of a Rule 10b-5 claim. *Ross v. Bank South, N.A.*, 885 F.2d 723, 728 (11th Cir. 1989).

As an initial matter, unlike many cases involving publicly traded securities, this is not a case in which plaintiffs are entitled to a presumption of reliance. The presumption of reliance under the "fraud on the market" theory requires that the securities be traded in an open and efficient market. *See Basic Inc. v. Levinson,* 485 U.S. 224, 247, 248 n.27 (1988); *Instituto de Prevision Militar v. Merrill Lynch & Co.*, No. 05-22721-CIV, 2007 WL 2900318, at *11 (S.D. Fla. Sept. 28, 2007), *aff'd*, 546 F.3d 1340 (11th Cir. 2008); *In re Sahlen & Assocs. Sec. Litig.*, 773 F. Supp. 342, 357 (S.D. Fla. 1991). Here, the Explanatory Memorandum states that "[t]here is no public market for the Participating Shares" (Compl. Ex. 12, at 2), and Plaintiffs do not allege that Optimal SUS shares traded in an open and efficient market. Accordingly, Plaintiffs cannot use the "fraud on the market theory". *Sahlen*, 773 F. Supp. at 357.[11]

Without a presumption of reliance, Plaintiffs must allege actual reliance on statements by PwC Ireland. To plead actual reliance, a plaintiff must clearly state "which particular documents were read or reasonably relied upon by which Plaintiffs". *Id*, at 353; *see also In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 322 (8th Cir. 1998) ("[P]laintiffs did not adequately plead actual reliance, because they did not allege specific facts showing that they relied on the Prospectus or any post-offering statements by the defendants. They did not claim

---

[11] The absence of a presumption of reliance would also defeat any effort to certify a class of Optimal SUS shareholders, should the case proceed. Where individual issues of reliance predominate, class certification is inappropriate. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223-24 (2d Cir. 2008).

that they ever read the Prospectus or specify which allegedly fraudulent statements they relied on in purchasing NationsMart stock.").

        The conclusory allegation in paragraph 670 of the Complaint is thus insufficient to plead actual reliance. Plaintiffs allege only that they "relied, to their detriment, on such misleading statements and omissions contained in PwC Ireland's unqualified audit opinions by investing in Optimal SUS". (Compl. ¶ 670.) Tellingly, Plaintiffs nowhere allege that they actually read any of PwC Ireland's audit reports before purchasing Optimal SUS shares, and that they relied on PwC Ireland's audit reports in making that purchase. A bare allegation that plaintiffs relied on misleading statements does not survive dismissal. *See Fezzani v. Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 428 (S.D.N.Y. 2008).

        PwC Ireland pointed out this pleading deficiency in its original Motion to Dismiss (D.E. 111, at 16-17). Presumably, Plaintiffs have failed to plead actual reliance because they cannot do so. Accordingly, the Section 10(b) claim against PwC Ireland should be dismissed for failure to plead facts sufficient to establish reliance.

## III.   PWC IRELAND IS NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA FOR THE COMMON-LAW CLAIMS.

        If this Court dismisses Plaintiffs' Section 10(b) claim against PwC Ireland as set forth above in Part II, the Court should then dismiss the common-law claims for the additional reason of lack of personal jurisdiction over PwC Ireland in Florida. *See Sturm v. Marriott Marquis Corp.*, 26 F. Supp. 2d 1358, 1373 (N.D. Ga. 1998) (after dismissing federal securities claims, court examines whether personal jurisdiction is permitted under state long-arm statute for remaining state-law claims). A two-part test governs this inquiry: (1) whether Florida's long-arm statute allows the exercise of jurisdiction; and (2) whether exercise of jurisdiction over PwC Ireland would comport with the Due Process Clause of the Fourteenth Amendment. *See Horizon Aggressive Growth*, 421 F.3d at 1166.

        Plaintiffs erroneously attempt to establish personal jurisdiction over PwC Ireland based on New York's long-arm statute. (*See* Compl. ¶ 367.) But contacts with Florida, and Florida's long-arm statute, are what matter here. In the absence of claims under a federal statute

(such as the Exchange Act) authorizing worldwide service of process, this Court may exercise personal jurisdiction over a non-resident defendant, such as PwC Ireland, only to the extent permitted by Florida's long-arm statute. *See Nippon Credit Bank*, 291 F.3d at 746; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855-56 (11th Cir. 1990).

It makes no difference that an action originally filed by other plaintiffs in federal court in New York, *Santos v. Banco Santander S.A.*, No. 09 CV 2838 (S.D.N.Y. March 25, 2009), was transferred to this Court. (*See* Transfer Order, Aug. 27, 2009 (D.E. 24).) Following the transfer, Plaintiffs voluntarily filed "a whole new complaint", which makes no reference to *Santos* and does not "seek . . . to preserve the individual identity of the[] former class action complaints". *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 780 (9th Cir. 1994). Indeed, none of the six plaintiffs in the *Santos* action is named as a plaintiff in the consolidated Complaint here. Plaintiffs in this action are the original plaintiffs and intervenors in the *Mar Octava* action, one of the plaintiffs from the *Puado* action, and a wholly new plaintiff. (*See* Compl. ¶¶ 35-41.) The omission of all the *Santos* plaintiffs from the Complaint effectively dismissed them as parties. *See D'Acquisto v. Washington*, 750 F. Supp. 342, 347 (N.D. Ill. 1990). The voluntary filing of a superseding consolidated Complaint without the *Santos* plaintiffs prevents Plaintiffs here from establishing jurisdiction based on contacts with New York.

Under Florida's long-arm statute, the Court lacks general jurisdiction over PwC Ireland because it does not conduct "substantial and not isolated activity" in Florida. Fla. Stat. § 48.193(2). This "requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause as discussed in *Helicopteros*". *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 n.6 (11th Cir. 2002). Plaintiffs do not allege that PwC Ireland engaged in any activity in Florida, let alone substantial and not isolated activity.

Likewise, none of the provisions of Florida's long-arm statute would confer specific jurisdiction. *See* Fla. Stat. § 48.193(1). Plaintiffs allege neither that PwC Ireland "[c]ommitt[ed] a tortious act within this state", *id.* § 48.193(1)(b), nor that PwC Ireland meets

22

the "effects test" for certain out-of-state activities "[c]ausing injury to persons or property within this state", *id.* § 48.193(1)(f).

Finally, for the reasons set forth above (*see supra* Part I), subjecting PwC Ireland to jurisdiction in Florida would be contrary to fair play and substantial justice.

## IV.   PLAINTIFFS' COMMON-LAW CLAIMS AGAINST PWC IRELAND FAIL TO STATE A CLAIM.

Plaintiffs assert three common-law claims against PwC Ireland:  negligence, gross negligence and unjust enrichment.  Plaintiffs purport to bring two duplicative sets of these claims, once under Florida law (Counts 16, 17 and 19) and once under New York law (Counts 20, 21 and 23).

Choice of law is a legal question for the Court, and Plaintiffs may not designate the law that governs their claims.  *See Grupo Televisa, S.A. v. Telemundo Commc'n Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  Nor may Plaintiffs maintain the same claims simultaneously under the laws of two different states.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307-08 (1981) (the court must select "one law from among the laws of several jurisdictions having some contact with the controversy").  PwC Ireland respectfully submits that neither Florida nor New York law applies to this controversy, where the parties are foreign, and both PwC Ireland's alleged conduct and Plaintiffs' alleged injury occurred outside the United States. *See Trumpet Vines Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115-16, 1119-20 (11th Cir. 1996) (applying Florida choice-of-law rules for tort and unjust enrichment claims). But Plaintiffs' common-law claims against PwC Ireland lack merit no matter what law is applied.  PwC Ireland therefore demonstrates in this motion that Plaintiffs do not state a claim for negligence, gross negligence or unjust enrichment under either Florida or New York law.[12]

---

[12] If necessary, PwC Ireland will brief the choice-of-law issue at a later time, and submit proof of foreign law under Rule 44.1.  In the meantime, the Court may apply forum law. *See Banco de Credito Indus., S.A. v. Tesoreria General*, 990 F.2d 827, 836 (5th Cir. 1993).

A.     **Plaintiffs Do Not State a Claim Against PwC Ireland for Negligence.**

Plaintiffs' negligence claim fails as a matter of law for at least two reasons common to the law of negligence in most jurisdictions: (1) PwC Ireland owed no duty to Plaintiffs; and (2) Plaintiffs fail to allege sufficiently that they relied on PwC's audit report on the Optimal SUS financial statements.

*First*, in both Florida and New York, the class of persons entitled to hold an auditor liable in negligence is limited. Auditors cannot be held liable in negligence to an unlimited class of persons who might rely on audited financial statements. Plaintiffs present that precise scenario: the unlimited class of shareholders of Optimal SUS are not specifically intended beneficiaries of PwC Ireland's audit report, and therefore may not sue PwC Ireland in negligence.

In *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931) (Cardozo, J.), the New York Court of Appeals held that an auditor is liable in negligence only to the audit client, with whom the auditor is in contractual privity, or one with whom the "bond was so close as to approach that of privity, if not completely one with it". *Id.* at 446. This "near privity" requirement was defined in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 118 (N.Y. 1985): an auditor may be held liable in negligence to a third party only if (1) the auditor was "aware that the financial reports were to be used for a particular purpose"; (2) "in the furtherance of which a known party . . . was intended to rely"; and (3) there is "conduct on the part of the accountant[] linking [it] to the [third party]", showing that the accountant understood the party would rely. *Id.* at 118. In *Credit Alliance*, the court held that the auditor was not liable in negligence because, although the auditor was on notice that plaintiffs would see the report, there was no allegation that the report was prepared with a specific purpose in mind or that the auditor had engaged in conduct providing a link with the plaintiff. *Id.* at 119.

Similarly, the Florida Supreme Court has adopted Section 552 of the Restatement (Second) of Torts, under which an auditor may be held liable in negligence only to "those persons . . . whom he knows and intends will rely on his opinion or whom he knows his client intends will so rely". *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990).

There is no liability where the auditor "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated". *Id.* at 15-16 (quotation omitted). On the facts of *First Florida Bank*, the Supreme Court held the auditor liable because he delivered the financial statements of his client to a bank for the purpose of negotiating a loan on the client's behalf. The auditor knew that the bank would rely on the financial statements in considering whether to lend money to his client. The Court explained that, "except for the unusual facts of this case", the auditor could not be held liable to the bank for negligence in the audit. *Id.* at 16.

Florida and New York courts agree that auditors are not liable to the unlimited class of shareholders. *See Machata v. Seidman & Seidman*, 644 So. 2d 114, 116 (Fla. 4th DCA 1994); *Applestein v. Deloitte Haskins & Sells*, 637 So. 2d 349, 349-50 (Fla. 3d DCA 1994); *SIPC v. BDO Seidman, L.L.P.*, 746 N.E.2d 1042, 1048-49 (N.Y. 2001); *Parrott v. Coopers & Lybrand, L.L.P.*, 741 N.E.2d 506, 509 (N.Y. 2000); *Security Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 597 N.E.2d 1080, 1086 (N.Y. 1992); *William Iselin & Co. v. Landau*, 522 N.E.2d 21, 23-24 (N.Y. 1988); *JP Foodservice Distribs., Inc. v. PricewaterhouseCoopers*, 822 N.Y.S.2d 47, 48 (App. Div. 2006); *Houbigant v. Deloitte & Touche, L.L.P.*, 753 N.Y.S.2d 493, 495 (App. Div. 2003); *LaSalle Nat'l Bank v. Ernst & Young L.L.P.*, 729 N.Y.S.2d 671, 674-76 (App. Div. 2001). Courts apply the "near privity" or Section 552 standard—and dismiss suits by unlimited classes of shareholders—so as "to provide fair and manageable bounds to what otherwise could prove limitless liability". *Parrott*, 741 N.E.2d at 508. Because the auditor is a "second string player, someone who has relied upon information provided to the primary player, the failing business, to generate information for distribution", courts strictly limit "the scope of the accountant's liability" in negligence to the client or a "limited group of third persons"—as opposed to shareholders as a whole. *Machata*, 644 So. 2d at 115.

Plaintiffs' assertions that "PwC Ireland issued audit opinions directly to Plaintiffs and the Class" and "addressed its audit opinions to shareholders" (Compl. ¶¶ 518, 527, 551, 560) cannot support liability as a matter of law. *See Parrott*, 741 N.E.2d at 509 (no liability where auditor wrote in a transmittal letter submitted with the audit report that the audit was performed

25

"for stock transactions involving employees of the Company"); *William Iselin*, 522 N.E.2d at 24 (sending the report directly to the plaintiff does not demonstrate the auditor's understanding of the plaintiff's reliance). Far more direct conduct has been held insufficient to demonstrate that the auditor was aware of the third party's reliance. *See, e.g., LaSalle*, 729 N.Y.S.2d at 675-76 (no liability even where auditor spoke with the third party on the phone and gave oral assurances that the client's internal controls were sufficient to handle its growth).

Plaintiffs do not allege that PwC Ireland's audit was conducted for the purpose of a specific transaction known to PwC Ireland at the time. *See Machata*, 644 So. 2d at 116 (dismissing where auditor was not "aware of a specific transaction at the time of the undertaking for which the work was to be used"). Plaintiffs also do not allege that PwC Ireland was involved in the selling or the marketing of the Fund. PwC Ireland performed a standard audit of Optimal Multiadvisors with no specific use or recipient (beyond the client) in mind. (*See* Compl. ¶ 199.) Plaintiffs are merely members of the general class of Optimal SUS shareholders, who may not maintain a negligence action against PwC Ireland.

*Second*, Plaintiffs have failed to allege actual reliance on PwC Ireland's audit report. The bare allegation that "Plaintiffs and the Class foreseeably and reasonably relied, directly or indirectly, on PwC Ireland . . . to exercise such care as ordinarily exercised by auditors . . . in conducting the audits of Optimal SUS" (Compl. ¶¶ 519, 528, 552, 561) cannot survive a motion to dismiss.

Both Florida and New York require actual reliance, which means that the plaintiff must have read and relied on the audit report. *See First Fla. Bank*, 558 So. 2d at 14-15 (adopting Restatement (Second) of Torts § 552); *Parrott*, 741 N.E.2d at 509. Notably absent from Plaintiffs' Complaint is any allegation that any Plaintiff actually read, or even ever received, PwC Ireland's audit report on audited financial statements, let alone that such a Plaintiff relied on PwC Ireland's opinion in connection with his or her investment in Optimal SUS. Even though PwC Ireland pointed out the absence of such an allegation in its original Motion to Dismiss (D.E. 111, at 19), Plaintiffs failed to cure the deficiency. Absent an allegation of actual reliance, Plaintiffs' negligence claim must be dismissed. *See Parrott*, 741 N.E.2d at 509; *White*

26

*v. BDO Seidman, L.L.P.*, 549 S.E.2d 490, 492, 494 (Ga. Ct. App. 2001) (decided under Restatement (Second) of Torts § 552).

   B.   **Plaintiffs Do Not State a Claim Against PwC Ireland for Gross Negligence.**

   Plaintiffs' gross negligence claim fails (1) for the same reasons as their negligence claim, and (2) because gross negligence is not a recognized cause of action for suits against auditors.

   *First*, in New York "there is no independent action for gross negligence against accountants". *Equitable Life Assurance Soc'y of United States v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1033 (S.D.N.Y. 1985); *see also HSA Residential Mortgage Servs. of Texas v. Casuccio*, 350 F. Supp. 2d 352, 363, 369 (E.D.N.Y. 2003); *Water Street Leasehold L.L.C. v. Deloitte & Touche L.L.P.*, 796 N.Y.S.2d 598, 600 (App. Div. 2005); *Rotterdam Ventures, Inc. v. Ernst & Young L.L.P.*, 752 N.Y.S.2d 746, 747 (App. Div. 2002). The only significance of gross negligence is that, in some circumstances, it "may furnish evidence leading to an inference of fraud". *State Street Trust Co. v. Ernst*, 15 N.E.2d 416, 419 (N.Y. 1938). Similarly, under Florida law a finding of gross negligence may permit an inference of fraud. *See Inv. Corp. of Fla. v. Buchman*, 208 So. 2d 291, 293 n.1 (Fla. 1968). PwC Ireland is aware of no Florida case authorizing an independent action for gross negligence against accountants.[13]

   *Second*, even if there is a separate cause of action for gross negligence, Plaintiffs' gross negligence claim suffers from the same fatal flaws as their ordinary negligence claim. PwC Ireland owed no duty to Plaintiffs, who are merely members of the general public who may have come to rely on PwC Ireland's audit down the road. *See First Fla. Bank*, 558 So. 2d at 14 ("The [Section 552] rule shall also apply to allegations of gross negligence."). Further, Plaintiffs

---

[13] In *First Florida Bank*, the plaintiff asserted separate claims for negligence and gross negligence, and the defendant argued that there was no separate cause of action for gross negligence. (The briefs to the Supreme Court of Florida in that case, No. 74,034, are available at http://www.law.fsu.edu/library/flsupct/74034/74034.html.) The Supreme Court did not reach the issue because it held that Restatement (Second) of Torts § 552 "shall also apply to allegations of gross negligence". 558 So. 2d at 14.

27

have not sufficiently alleged reliance on PwC Ireland's audit report.  *See Water Street*, 796 N.Y.S.2d at 600 (if gross negligence were actionable, reliance would be required).  Accordingly, Plaintiffs' gross negligence claim should be dismissed.

**C.      Plaintiffs Do Not State a Claim Against PwC Ireland for Unjust Enrichment.**

Plaintiffs' final claim against PwC Ireland is for unjust enrichment.  Plaintiffs evidently seek to recover from PwC Ireland what they themselves describe as the "paltry sums" that Optimal SUS paid to PwC Ireland for the annual audits, $22,785 in 2006 and $37,052 in 2007.  (Compl. ¶ 262.)  Plaintiffs cannot maintain an action for unjust enrichment because (1) Plaintiffs themselves did not bestow a direct benefit on PwC Ireland and (2) an adequate remedy exists at law.[14]

*First*, Plaintiffs do not, and cannot, allege that they directly conferred a benefit on PwC Ireland.  Under Florida and New York law, the plaintiff in an unjust enrichment action must show that it directly bestowed a benefit on the defendant.  *Adventist Health Sys./Sunbelt Inc. v. Medical Savings Ins. Co.*, No. 6:03-cv-1121-Orl-19KRS, 2004 U.S. Dist. LEXIS 30976, at *18-19 (M.D. Fla. Mar. 8, 2004); *Nova Info Sys., Inc. v. Greenwich Ins. Co.*, No. 6:00-cv-1703-Orl-31KRS, 2002 WL 32075792, at *10 (M.D. Fla. Dec. 13, 2002); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So. 2d 883, 884 (Fla. 2d DCA 1982); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *Mazzarro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 397-98 (S.D.N.Y. 2007); *Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006); *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1333 (S.D.N.Y. 1997).  For example, in *ABF*, plaintiffs invested money with a hedge fund in reliance on false representations by the fund's investment advisor, ACM.  957 F. Supp. at 1314-15.  After

---

[14] Plaintiffs' unjust enrichment claim will also fail upon the showing of an express contract between PwC Ireland and Optimal SUS.  *See Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998).  Plaintiffs in their Complaint have ignored the existence of a contract but, if required to answer, PwC Ireland would attach the contract and be entitled to judgment on the pleadings.

28

the fund filed for bankruptcy, the investors sued ACM for unjust enrichment, seeking return of the fees and charges paid to ACM. *Id.* at 1333. The court dismissed plaintiffs' unjust enrichment claim because the hedge fund, not the investors, paid the fees to ACM. *Id.* at 1334.

Similarly, Plaintiffs here conferred no direct benefit on PwC Ireland. The "fees and other monies" that Plaintiffs allege PwC Ireland obtained (Compl. ¶ 547) were not paid by Plaintiffs. Rather, they were paid by Optimal SUS as fees for the annual audits. (*See id.* ¶ 262; Ex. 27, at 9.) The allegation that PwC Ireland's audit fees indirectly harmed the shareholders of Optimal SUS by increasing the expenses of Optimal SUS and thereby reducing the net asset value of the shares (*see* Compl. ¶ 547) is insufficient as a matter of law.

*Second,* Plaintiffs do not, and cannot, allege that no adequate legal remedy exists. "[U]njust enrichment is an equitable remedy and is not available where an adequate legal remedy exists." *Martinez v. Weyerhaeuser Mort. Co.*, 959 F. Supp. 1511, 1518 (S.D. Fla. 1996); *FDIC v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1561 (S.D. Fla. 1993); *see Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 188-89 (E.D.N.Y. 2004); *Crigger v. Fahnestock & Co.*, No. 01 Civ. 07819 (JFK), 2003 WL 22170607, at *12 (S.D.N.Y. Sep. 18, 2003). For example, in *Crigger*, the plaintiffs alleged that two brokers were unjustly enriched when they received compensation for fraudulently handling plaintiffs' investments. The court held that plaintiffs' "unjust enrichment claim is little more than a recasting of its common law fraud claim in the guise of an equity proceeding". *Crigger*, 2003 WL 22170607, at *12. Because plaintiffs' fraud claim provided an adequate legal remedy, the court dismissed the unjust enrichment claim. *Id.*

Plaintiffs' allegations fall squarely within this rule. Plaintiffs complain that PwC Ireland "was not entitled" to audit fees because Plaintiffs did not "receiv[e] adequate benefit or compensation in return". (Compl. ¶¶ 547-548.) Presumably, Plaintiffs' contention is that PwC Ireland did not comply with auditing standards, and its audit therefore allegedly had no value. However, Plaintiffs also sue PwC Ireland for negligence—a legal claim that addresses the identical conduct (the allegedly negligent audit). Because Plaintiffs did not pay PwC Ireland and

29

because an adequate legal remedy exists, Plaintiffs' attempt to recast their negligence claim as one for unjust enrichment should fail, and the unjust enrichment claim should be dismissed.

## V.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS.*

Plaintiffs have brought suit in a forum with little connection to their claims.  To the extent that the Court does not dismiss the claims against PwC Ireland for lack of personal jurisdiction or on the merits, the doctrine of *forum non conveniens* therefore provides an independent basis for dismissing the Complaint so that Plaintiffs may re-file in Ireland, where the case would be more conveniently litigated.  A court may dismiss the entire action for *forum non conveniens*, or alternatively may dismiss claims against some defendants on the merits and against the remaining defendants for *forum non conveniens.  See, e.g., Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234-35 (2d Cir. 1996).

PwC Ireland must demonstrate that (1) an "adequate alternative forum" is available, and (2) "private and public interest factors weigh in favor of dismissal".  *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997)).  As a threshold matter on a *forum non conveniens* motion, the Court must determine the degree of deference owed to the plaintiff's choice of forum.  This inquiry is easily resolved here:  Plaintiffs' choice of forum receives little, if any, deference because Plaintiffs are not American citizens or residents. *See Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1312 n.15 (11th Cir. 2002).  (*See* Compl. ¶¶ 35-41.)  When, as here, plaintiffs do not choose their home forum, it is reasonable to assume that their choice was motivated by something other than convenience.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

### A.   Ireland Is an Adequate Alternative Forum.

The bar for showing an "adequate alternative forum" is set low.  *See* 14D Wright & Miller, *Federal Practice and Procedure* § 3828.3 (3d ed. 2007).  A defendant seeking dismissal must show that the proposed forum is "available"—in other words, that defendants would be subject to service of process in that forum.  *Satz*, 244 F.3d at 1282 (quoting *Republic of*

30

*Panama*, 119 F.3d at 951). Next, the defendant must prove the forum is adequate, a standard satisfied unless the forum provides "no remedy at all". *Satz*, 244 F.3d at 1283 (quoting *Piper*, 454 U.S. at 254 (quotation omitted)). The foreign forum need not, of course, provide procedures equivalent to those in the United States. *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996). It is the plaintiff's burden to produce evidence showing that the forum is inadequate due to corruption, delay or lack of due process. *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

Ireland easily satisfies these criteria. First, Irish courts would be able to exercise jurisdiction. An Irish administrator (HSSI) and an Irish custodian (HTIE) administered Optimal SUS, and Irish auditors (PwC Ireland) audited Optimal SUS. (Compl. ¶¶ 50, 54-55.) Most of the other defendants are domiciled in the European Union or Switzerland, and Irish courts would therefore have jurisdiction over them based on their domicile. (Hogan Decl. ¶¶ 25-28.) Although Plaintiffs have recently added PwC Bermuda, PwC U.S. and PwC IL as defendants, courts do not "allow litigants to skew the [*forum non conveniens*] analysis by joining claims that lack merit". *Scottish Air*, 81 F.3d at 1235. Where the Hong Kong firm in the BDO accounting network moved to dismiss for *forum non conveniens* in favor of Hong Kong, the court first dismissed the claims against the U.S. BDO firm under Rule 12(b)(6) and then granted the *forum non* motion as to the remaining defendants. *Yung v. Lee*, No. 00 Civ. 3965 (DAB), 2002 WL 31008970, at *3-4 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 160 Fed. Appx. 37 (2d Cir. 2005). Thus, to the extent there is an issue of whether certain Defendants would be subject to jurisdiction in Ireland, the Court, where appropriate, may dismiss claims against some Defendants on the merits and then dismiss the rest of the case for *forum non conveniens*. Ireland is therefore an "available" forum.

Ireland is also an "adequate" forum for the determination of Plaintiffs' case. A defendant's proposed alternative forum carries a presumption of adequacy. *See Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1322 (S.D. Fla. 2006). And the Irish courts are fully adequate. Irish law recognizes negligence and fraud-based claims against investment fund managers, promoters, directors, custodians, administrators and auditors. (Hogan Decl. ¶ 20.)

31

Irish law provides for damages in such cases when plaintiffs prove their entitlement thereto. (*Id.*) And the Irish courts provide parties with the opportunity to conduct document discovery to develop their claims and defenses. (*Id.* ¶ 17.) Consequently, it cannot be said that Ireland would offer plaintiffs "no remedy at all". *Satz*, 244 F.3d at 1283 (quotation omitted).

Indeed, U.S. courts have repeatedly found Ireland to be an adequate alternative forum. *See, e.g., Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1124 (S.D.N.Y. 1992); *Dowling v. Hyland Therapeutics Div. Travenol Labs., Inc.*, 767 F. Supp. 57, 58 (S.D.N.Y. 1991); *Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094, 1120-21 (S.D.N.Y. 1982); *Koger, Inc. v. O'Donnell*, No. 07-3091 (KSH), 2007 WL 3232586, at *5 (D.N.J. Oct. 31, 2007).

B.   **Private and Public Interests Weigh in Favor of Dismissal.**

Ireland is also a more convenient forum in which to litigate this dispute. Courts consider "private" and "public" interest factors in balancing the convenience of one forum against another. Private-interest factors include "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive". *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1314 (11th Cir. 2001) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (quotation omitted)). Access to evidence is "[p]erhaps the most important 'private interest'". *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003). Public-interest factors include the local interest in deciding localized controversies, the burden on local jurors of hearing a case involving foreign parties, and the potential need to apply foreign law. *Id.* at 1307.

Here, the private-interest factors weigh clearly in favor of dismissal. The day-to-day administration of Optimal SUS—such as subscription and redemption of shares, calculation of the Fund's asset value, and preparation of the Fund's accounts—took place in Ireland, under the supervision of an Irish administrator that was itself under the supervision of the Fund's directors. (Compl. Ex. 12, at 12). The Fund's financial statements were audited by PwC Ireland. (*Id.* at 1, 19.) PwC Ireland's partners and employees reside in Ireland. (MacMahon Decl. ¶ 5.) Likewise, PwC Ireland's working papers for the Optimal SUS audits, and its copies of relevant

electronic and hard-copy communications regarding Optimal SUS, are all located at its offices in Ireland. (*Id.* ¶ 7.)  The same is presumably true of the administrator's and custodian's witnesses and documents.  The presence in Ireland of most of the documents and witnesses that Plaintiffs would need to develop their case (and that Defendants would need to develop their defenses) weighs strongly in favor of dismissal.  Given that (except for BSI and PwC U.S.) Defendants are not alleged to have offices or personnel in Florida, Defendants would also have to incur significant expense sending their employees and documents to Florida.

The public-interest factors strengthen the case for dismissal.  A foreign jurisdiction's interest in regulating the conduct at issue is an important *forum non conveniens* factor.  *See Republic of Panama*, 119 F.3d at 953.  Here, Ireland has a greater interest in regulating the defendants than does the United States.  Although Optimal Multiadvisors Ltd. (of which Optimal SUS was in effect a sub-fund) was domiciled in The Bahamas, its Irish auditor (PwC Ireland), administrator (HSSI) and custodian (HTIE) are all authorized by and subject to Irish regulators.  (MacMahon Decl. ¶ 4; Hogan Decl. ¶ 19.)[15]  The United States has no such interest in the defendants, as not one of the Optimal SUS shareholders was American, and the Securities and Exchange Commission does not regulate the fund, its auditor, administrator or custodian.  (*See* Compl. Ex. 12, at 5.)  Moreover, it would unduly burden this Court and a Florida jury to hold a trial involving foreign parties when none of the alleged wrongs took place here.

* * *

Faced with similar facts, the Northern District of Alabama dismissed securities fraud and common-law claims against a Canadian auditor for *forum non conveniens*.  *Chazen v. Deloitte & Touche, LLP*, 247 F. Supp. 2d 1259, 1266-68 (N.D. Ala. 2003), *aff'd in relevant part,*

---

[15] Although PwC Ireland is being sued only with respect to Optimal SUS (*see* Compl. ¶ 53), Plaintiffs are suing certain other Defendants over the Optimal Multiadvisors Ireland plc fund as well.  The Prospectus for that fund states that it is organized under the laws of Ireland and authorized by the Irish Financial Regulator.  (*See* Compl. Ex. 7, at 12.)  It has its registered office in Dublin, its custodian, administrator, secretary, auditors, legal advisors and sponsoring brokers are all in Dublin, and its investment manager (OIS) is in Switzerland.  (*Id.* at 11.)

*rev'd in part on other grounds*, 88 Fed. Appx. 390 (11th Cir. 2003). There, the court relied on the following facts, all of which are present here: the auditor was organized under the foreign jurisdiction's laws; the auditor had offices only in that jurisdiction; the audit was conducted out of those offices; the auditor's workpapers were in the foreign jurisdiction; the "vast majority" of relevant witnesses were located there; the cost for those witnesses to attend trial would be "lessened significantly" by trying the case in that forum; the plaintiff had sued a company that did not sell stock in the United States; and the foreign jurisdiction had a significant interest in "adjudicating claims that fraud was committed from within its borders". *Id.* at 1267-68. Dismissal was appropriate on those facts—even where the plaintiff was American, residing in Alabama, and his choice of forum was therefore entitled to deference. *Id.* at 1266. Here, where Plaintiffs are all foreign, dismissal for *forum non conveniens* is even more appropriate.

34

## CONCLUSION

For the reasons set forth above, PwC Ireland respectfully requests that the Court dismiss the Complaint against it with prejudice.

November 18, 2009                                    Respectfully submitted,


                                                     By: /s/  Harry R. Schafer_____

                                                     Richard H. Critchlow (Bar No. 155227)
                                                     Harry R. Schafer (Bar No. 508667)
                                                     **KENNY NACHWALTER, P.A.**
                                                     Miami Center – Suite 1100
                                                     201 South Biscayne Boulevard
                                                     Miami, FL 33131
                                                     (305) 373-1000 (telephone)
                                                     (305) 372-1861 (facsimile)
                                                     rhc@kennynachwalter.com
                                                     hrs@kennynachwalter.com

                                                     Thomas G. Rafferty (*Admitted Pro Hac Vice*)
                                                     Antony L. Ryan  (*Admitted Pro Hac Vice*)
                                                     **CRAVATH, SWAINE & MOORE LLP**
                                                     Worldwide Plaza
                                                     825 Eighth Avenue
                                                     New York, NY 10019
                                                     (212) 474-1000 (telephone)
                                                     (212) 474-3700 (facsimile)
                                                     trafferty@cravath.com
                                                     aryan@cravath.com

                                                     *Attorneys for Defendant*
                                                     *PricewaterhouseCoopers Ireland*

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>/s/ Harry R. Schafer</u> _____

## Service List

### *IN RE BANCO SANTANDER SECURITIES-OPTIMAL LITIGATION*
### CASE NO.: 09-20215-CIV-HUCK/O'SULLIVAN

#### Counsel for Plaintiffs

Michael Hanzman
ACKERMAN, LINK & SARTORY, P.A.
2525 Ponce de Leon Blvd., Suite 700
Coral Gables, FL 33134
(305) 529-9100 (telephone)
(305) 529-1612 (facsimile)
mhanzman@alslaw.com

Joel H. Bernstein
Javier Bleichmar
Donald P. Delaney
Alan I. Ellman
Christopher J. Keller
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700 (telephone)
(212) 818-0477 (facsimile)
jbernstein@labaton.com
jbleichmar@labaton.com
ddelaney@labaton.com
aellman@labaton.com
ckeller@labaton.com

Stephen R. Astley
Paul Jeffrey Geller
Michael L. Greenwald
Jack Reise
Douglas S. Wilens
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000 (telephone)
(561) 750-3364 (facsimile)
sastley@csgrr.com
pgeller@csgrr.com
mgreenwald@csgrr.com
jreise@csgrr.com
dwilens@csgrr.com

Michael F. Ghozland
James I. Jaconette
Julie A. Kearns
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058 (telephone)
(619) 231-7423 (facsimile)
mghozland@csgrr.com
jamesj@csgrr.com
jkearns@csgrr.com

Stephen L. Brodsky
Ana Maria Cabassa
David R. Kromm
Robert S. Schachter
Hillary Sobel
Jeffrey C. Zwerling
ZWERLING, SCHACHTER & ZWERLING, LLP
41 Madison Avenue
New York, NY 10010
(212) 223-3900 (telephone)
(212) 371-5969 (facsimile)
sbrodsky@zsz.com
acabassa@zsz.com
dkromm@zsz.com
rschachter@zsz.com
hsobel@zsz.com
jzwerling@zsz.com

Michael Elliot Criden
Kevin Bruce Love
CRIDEN & LOVE, P.A.
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
(305) 357-9010 (telephone)
(305) 357-9050 (facsimile)
mcriden@cridenlove.com
klove@cridenlove.com

Daniel P. Chiplock
Steven E. Fineman
David S. Stellings
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500 (telephone)
(212) 355-9592 (facsimile)
dchiplock@lchb.com
sfineman@lchb.com
dstellings@lchb.com

Richard M. Heimann
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
25 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (facsimile)
rheimann@lchb.com

**Counsel for Defendants
Banco Santander, S.A.,
Banco Santander International,
Optimal Investment Services S.A.
Manuel Echeverría Falla,
Anthony L.M. Inder Rieden,
Brian Wilkinson**

Samuel A. Danon
Gustavo J. Membiela
HUNTON & WILLIAMS LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
(305) 810-2500 (telephone)
(305) 810-2460 (facsimile)
sdanon@hunton.com
gmembiela@hunton.com

**Counsel for Defendants HSBC Securities
Services (Ireland) Limited and HSBC
Institutional Trust Services (Ireland)
Limited**

Jason D. Joffe
Traci H. Rollins
SQUIRE, SANDERS & DEMPSEY LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
(561) 650-7200 (telephone)
(561) 655-1509 (facsimile)
jjoffe@ssd.com
trollins@ssd.com

Evan A. Davis
Joaquin P. Terceno
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (telephone)
(212) 225-3999 (facsimile)
edavis@cgsh.com
jterceno@cgsh.com

**Counsel for Defendant
PricewaterhouseCoopers International,
Ltd.**

Benjamine Reid
CARLTON FIELDS, P.A.
100 Southeast Second Street, Suite 4000
Miami, FL 33131
(305) 530-0050 (telephone)
(305) 530-0055 (facsimile)
breid@carltonfields.com

Samuel J. Salario
CARLTON FIELDS, P.A.
Corporate Center Three at International
Plaza
4221 West Boy Scout Blvd., Suite 1000
Tampa, FL 33607
(813) 223-7000 (telephone)
(813) 229-4133 (facsimile)
ssalario@carltonfields.com

**Counsel for Defendant
PricewaterhouseCoopers,
a Bermuda Partnership**

Laura Besvinick
HOGAN & HARTSON LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
(305) 459-6500 (telephone)
(305) 459-6550 (facsimile)
lbesvinick@hhlaw.com

Sanford M. Litvack
Dennis H. Tracey, III
HOGAN & HARTSON LLP
875 Third Ave.
New York, NY 10022
(212) 918-3000 (telephone)
(212) 918-3100 (facsimile)
slitvack@hhlaw.com
dhtracey@hhlaw.com

**Counsel for Defendant
PricewaterhouseCoopers LLP**

Melissa Fernandez-Stiers
Manuel A. Garcia-Linares
Alan G. Greer
RICHMAN GREER, P.A.
Miami Center, Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-4000 (telephone)
(305) 373-4099 (facsimile)
mfernandez@richmangreer.com
mlinares@richmangreer.com
agreer@richmangreer.com

Michael P. Carroll
Michael S. Flynn
James W. Haldin
James H. R. Windels
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000 (telephone)
(212) 701-5800 (facsimile)
michael.carroll@davispolk.com
michael.flynn@davispolk.com
james.haldin@davispolk.com
james.windels@davispolk.com