# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-20215-CIV-HUCK/O'SULLIVAN

IN RE SANTANDER-OPTIMAL SECURITIES
LITIGATION

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Benjamine Reid (Bar Number 183522)
Samuel J. Salario, Jr. (Bar Number 83460)
CARLTON FIELDS, P.A.
4000 International Place
100 S.E. Second Street
Miami, FL 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
breid@carltonfields.com
ssalario@carltonfields.com

Howard M. Shapiro
Fraser L. Hunter, Jr.
Anne K. Small
Julia M. Lipez
WILMER CUTLER PICKERING
        HALE & DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
howard.shapiro@wilmerhale.com
fraser.hunter@wilmerhale.com
anne.small@wilmerhale.com
julia.lipez@wilmerhale.com
(*pro hac vice* admission to be requested)

*Attorneys for Defendant*
*PricewaterhouseCoopers International Limited*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

THE ALLEGATIONS .......................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.  Plaintiffs Have Failed To State A Claim Of Vicarious Liability Against PwCIL ............. 4

  A.  To State A Claim Of Vicarious Liability, Agency Allegations Must Be Directed
      To The Underlying Misconduct ............................................................................ 5

  B.  The Amended Complaint Fails To Allege Any Connection Between PwCIL And
      The Underlying Audits On Which Plaintiffs Base Their Negligence Claims ........ 7

II.  Plaintiffs Have Failed To State A Claim Under Section 20(a) Of The Exchange Act ..... 13

  A.  Plaintiffs Have Not Adequately Alleged The Element Of "Control" .................. 14

  B.  Plaintiffs Fail To Plead Culpable Participation By PwCIL ................................ 17

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Aimis Art Corp. v. Northern Trust Securities, Inc.*,
   641 F. Supp. 2d 314 (S.D.N.Y. 2009) ............................................................... 18

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) ......................................................................15, 16

*Ashcroft v. Iqbal*,
   556 U.S. ---, 129 S. Ct. 1937 (2009) ........................................................4, 12, 15

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ............................................................................ 17

*Bamberg v. SG Cowen*,
   236 F. Supp. 2d 79 (D. Mass. 2002) ................................................................. 9

*Banco Espirito Santo International Ltd. v. BDO International, B.V.*,
   979 So. 2d 1030 (Fla. Dist. Ct. App. 2008) ..................................................11, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 4

*Brown v. Enstar Group Inc.*,
   84 F.3d 393 (11th Cir. 1996) .....................................................................14, 18

*Bruhl v. Price WaterhouseCoopers International*,
   No. 03-23044-Civ., 2007 WL 997362 (S.D. Fla. Mar. 27, 2007) ......................... 15

*Cleveland v. Caplaw Enterprises*,
   448 F.3d 518 (2d Cir. 2006) ............................................................................ 6

*Cooper v. Meridian Yachts, Ltd.*,
   575 F.3d 1151 (11th Cir. 2009) ........................................................................ 6

*Coronel v. Quanta Capital Holdings Ltd.*,
   No. 07 Civ. 1405, 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ........................... 19

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*,
   No. 05-60080-Civ, 2008 WL 926512 (S.D. Fla. Mar. 31, 2008) ........................... 5

*Cromer Finance Ltd. v. Berger*,
   Nos. 00 Civ 2284, 00 Civ 2498, 2002 WL 826847 (S.D.N.Y. May 2, 2002) ..................... 11

*Donohoe v. Consolidated Operating & Products Corp.*,
    30 F.3d 907 (7th Cir. 1994) ................................................................... 15

*Durgin v. Mon*,
    No. 06-61844-CIV, 2009 WL 3055216 (S.D. Fla. Sept. 21, 2009) ................................14, 18

*Edison Fund v. Cogent Investment Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008) ................................................................17, 18

*Ellington Management Group, LLC v. Ameriquest Mortgage Co.*,
    No. 09 Civ. 0416, 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009) ....................................... 18

*First New York Securities, L.L.C. v. United Rentals, Inc.*,
    --- F. Supp. 2d ---, 2009 WL 2641473 (D. Conn. Aug. 24, 2009) ....................................... 19

*Fojtasek v. NCL (Bahamas) Ltd.*,
    613 F. Supp. 2d 1351 (S.D. Fla. 2009) ................................................................... 5

*Goldschmidt v. Holman*,
    571 So. 2d 422 (Fla. 1990) ............................................................................ 5, 6

*Halenda v. Habitat for Humanity International, Inc.*,
    125 F. Supp. 2d 1361 (S.D. Fla.) ....................................................................... 5

*Harbaugh v. Greslin*,
    436 F. Supp. 2d 1315 (S.D. Fla. 2006) ................................................................. 6

*In re Asia Pulp & Paper Securities  Litigation*,
    293 F. Supp. 2d 391 (S.D.N.Y. 2003) ..............................................................15, 16

*In re Citigroup Auction Rate Securities Litigation*,
    Nos. 08 Civ. 3095, 09 Md. 2043, 2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) ................ 18

*In re Lernout & Hauspie Securities Litigation*,
    230 F. Supp. 2d 152 (D. Mass. 2002) ................................................................ 8, 9

*In re Medtronic Inc., Securities Litigation*,
    618 F. Supp. 2d 1016 (D. Minn. 2009) ................................................................. 19

*In re Mills Corp. Securities Litigation*,
    257 F.R.D. 101 (E.D. Va. 2009) ......................................................................... 19

*In re Moody's Corp. Securities Litigation*,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009) ................................................................. 18

*In re Mutual Funds Investment Litigation,*
   566 F.3d 111 (4th Cir. 2009) ................................................................. 15

*In re Parmalat Securities Litigation,*
   375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..................................................... 11

*In re Parmalat Securities Litigation,*
   594 F. Supp. 2d 444 (S.D.N.Y. 2009) ..................................................... 11

*In re Parmalat Securities Litigation,*
   598 F. Supp. 2d 569 (S.D.N.Y. 2009) ..................................................... 11

*In re Parmalat Securities Litigation,*
   --- F. Supp. 2d ---, 2009 WL 2996509 (S.D.N.Y. Sept. 21, 2009) ......................... 11

*In re Royal Dutch/Shell Transportation Securities Litigation,*
   380 F. Supp. 2d 509 (D.N.J. 2005) ................................................... 8, 13

*In re Schering-Plough Corp./Enhance Securities Litigation,*
   No. 08-CV-397, 2009 WL 2855457 (D.N.J. Sept. 2, 2009) ................................ 19

*In re Spear & Jackson Securities Litigation,*
   399 F. Supp. 2d 1350 (S.D. Fla. 2005) ................................................. 17

*In re UBS Auction Rate Securities Litigation,*
   No. 08 CV 2967, 2009 WL 860812 (S.D.N.Y. Mar. 30, 2009) .............................. 19

*In re WorldCom, Inc. Securities Litigation,*
   No. 02 Civ. 3288, 2003 WL 21488087 (S.D.N.Y. June 25, 2003) ........................... 9

*Kalin v. Xanboo, Inc.,*
   526 F. Supp. 2d 392 (S.D.N.Y. 2007) ..................................................... 19

*Kalin v. Xanboo, Inc.,*
   No. 04 Civ. 5931, 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009) ............................ 18

*Lanza v. Drexel & Co.,*
   479 F.2d 1277 (2d Cir. 1973) ............................................................. 19

*Laperriere v. Vesta Insurance Group, Inc.,*
   526 F.3d 715 (11th Cir. 2008) ..................................................... 14, 18, 19

*Mars v. Diocese of Rochester,*
   763 N.Y.S.2d 885 (N.Y. Sup. Ct. 2003) .................................................... 5

*Metge v. Baehler*,
  762 F.2d 621 (8th Cir. 1985)..................................................................................15, 17

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008)................................................................................13, 14

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers* LLP,
  No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)..................................6, 7, 13

*Orlinsky v. Patraka*,
  971 So. 2d 796 (Fla. Dist. Ct. App. 2008) ........................................................... 6

*Owens v. Gaffken & Barringer Fund, LLC*,
  No. 08 Civ. 8414, 2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) ..................................15, 18

*Pardo v. Tanning Research Laboratories, Inc.*,
  996 F. Supp. 1222 (M.D. Fla. 1998)................................................................ 6

*Pensee Associates Ltd. v. Quon Industries, Ltd.*,
  660 N.Y.S.2d 563 (N.Y. App. Div. 1997) ......................................................... 6

*Police & Fire Retirement System of Detroit v. Safenet, Inc.*,
  --- F. Supp. 2d --, 2009 WL 2391849 (S.D.N.Y. Aug. 5, 2009) ........................................ 18

*Rochez Brothers, Inc. v. Rhoades*,
  527 F.2d 880 (3d Cir. 1975)....................................................................... 19

*Rocker Management, LLC v. Lernout & Hauspie Speech Products N.V.*,
  No. Civ.A. 00-5965, 2005 WL 1365772 (D.N.J. June 8, 2005)............................................ 9

*Roessler v. Novak*,
  858 So. 2d 1158 (Fla. Dist. Ct. App. 2003) ........................................................ 5

*S.E.C. v. First Jersey Securities, Inc.*,
  101 F.3d 1450 (2d Cir. 1996)...................................................................... 17

*S.E.C. v. J.W. Barclay & Co.*,
  442 F.3d 834 (3d Cir. 2006)....................................................................... 17

*Sampson v. Contillo*,
  865 N.Y.S.2d 634 (N.Y. App. Div. 2008) .......................................................... 5

*Sanders Confectionary Products, Inc. v. Heller Finance, Inc.*,
  973 F.2d 474 (6th Cir. 1992)...................................................................... 15

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03 Civ. 3120, 2009 WL 1492196 (S.D.N.Y. May 27, 2009) ......................................... 18

*Sinaltrainal v. Coca-Cola Co.*,
    578 F.3d 1252 (11th Cir. 2009) .................................................................. 4

*Skidmore Energy, Inc. v. KPMG LLP*,
    No. CIV.A.3:03CV2138-B, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) .......................... 9

*Star Energy Corp. v. RSM Top-Audit*,
    No. 08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008).......................... 6, 7, 10, 13

*State v. American Tobacco Co.*,
    707 So. 2d 851 (Fla. Dist. Ct. App. 1998) ............................................................ 6

*Theoharous v. Fong*,
    256 F.3d 1219 (11th Cir. 2001).......................................................... 13, 14, 16

*Whetstone Candy Co. v. Kraft Foods, Inc.*,
    351 F.3d 1067 (11th Cir. 2003) ...................................................................... 7

### STATUTES

15 U.S.C. § 78t(a)................................................................................. 13

### OTHER AUTHORITIES

Jim Loney, *BDO International Found Not Liable In Key Audit Case*, Reuters, June 18, 2009 ... 12

World Trade Organization, Council for Trade in Services, Accountancy Services:
    Background Note by the Secretariat (December 4, 1998) ............................................. 7, 17

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant PricewaterhouseCoopers International Limited ("PwCIL") submits this Memorandum of Law in Support of its Motion to Dismiss the claims against it in the Consolidated Amended Class Action Complaint dated October 21, 2009 ("Amended Complaint").

## PRELIMINARY STATEMENT

Like thousands of other investors worldwide, plaintiffs allege that they suffered losses because of Bernard L. Madoff's ("Madoff") long-concealed, multi-billion-dollar Ponzi scheme. Plaintiffs were shareholders in Optimal Multiadvisors Ltd., which allegedly gave money, through two "sub funds," to Madoff to invest.  The bulk of plaintiffs' claims are directed to Optimal's investment manager, administrator, and custodian, each of which allegedly profited from fees paid by Madoff while supposedly ignoring red flags of Madoff's fraud.  Plaintiffs also name PricewaterhouseCoopers (Dublin) ("PwC Ireland"), the auditor of one of the two Optimal "sub funds" and, in an apparent effort to broaden their options for recovery, have recently added claims against PricewaterhouseCoopers LLP ("PwC U.S.") and PricewaterhouseCoopers Bermuda ("PwC Bermuda"), alleging little more than that representatives of these entities met with Madoff on two occasions.

At the farthest periphery of plaintiffs' allegations are the new claims against PwCIL, which plaintiffs seek to hold vicariously liable for the conduct of PwC Ireland, PwC U.S., and PwC Bermuda (together, the "PwC Member Firms").  These claims fail as a matter of law. Plaintiffs do not allege that PwCIL was involved in any way in the Optimal audits at issue. Indeed, the Amended Complaint does not allege a single fact from which this Court could plausibly infer that PwCIL had the power to control the PwC Member Firms in the relevant audits, much less exercised any control over the PwC Member Firms.  Instead, in their ill-conceived attempt to allege that PwCIL "controlled" the Optimal audits—the critical element of their claims—plaintiffs merely offer a handful of allegations about the structure and organization of PwCIL and its general role as the coordinating entity for its member firms.  Plaintiffs'

conclusory assertions of control, however, fail in the face of the substantial case law that has squarely rejected efforts to hold international accounting organizations liable for the auditing activities of member firms based on generalized descriptions of corporate structure.  This Court should do the same and dismiss the claims against PwCIL for failure to state a claim.

## THE ALLEGATIONS

Plaintiffs allege that they invested in Optimal Multiadvisors Ltd., a master fund that included two "sub funds": Optimal Strategic U.S. Equity Ltd. ("Optimal SUS"), which invested all of its assets with Madoff, and Optimal Arbitrage Ltd., which invested most of its assets with Madoff.  Am. Compl. ¶ 5.  Included among plaintiffs' 37 claims are claims directed at purported auditing failures concerning Optimal SUS.  *Id.* ¶¶ 214-61.[1]  Plaintiffs allege that PwC Ireland served as Optimal SUS's outside auditor from 2003-2007 and issued "clean audit opinion[s]" in each of those years.  *Id.* ¶ 199.  The PwC Member Firms allegedly "shared information between and among themselves regarding Madoff that affected the audits of the Optimal funds."  *Id.* p. 96.  The claims against the PwC Member Firms rest on assertions that, among other things, they failed to obtain independent confirmation that Madoff held Optimal SUS's assets, *id.* ¶¶ 26, 235; failed to confirm the existence of billions of dollars in treasury bills reported on Optimal SUS's balance sheet, *id.* ¶¶ 28, 237; never communicated with Madoff's auditors, *id.* ¶ 29; ignored significant risks concerning Madoff, *id.* ¶¶ 207, 211; and more generally failed to conform to international standards on auditing, *id.* p. 80.

Plaintiffs seek to hold PwCIL vicariously liable for the purported negligence and gross negligence of the PwC Member Firms and to hold it liable as a control person under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, for the conduct of PwC Ireland.  While conceding that PwCIL "does not provide services to clients," Am. Compl. ¶ 540,

---

[1]     Plaintiffs expressly limit their claims against the PwC entities to claims in connection with the audits of Optimal SUS.  Am. Compl. ¶ 53.  Plaintiffs do not sue PwCIL in connection with Optimal Arbitrage Ltd.

the Amended Complaint attempts to paint all PwC defendants as part of one large corporation, relying on only a handful of general allegations about PwCIL's structure and organization. For example, plaintiffs describe PwCIL as a "United Kingdom membership-based company" with "constituent PricewaterhouseCoopers offices, self-described as member firms." *Id*. ¶ 49. PwCIL purportedly serves as "an umbrella organization coordinating the accounting and auditing activities" of the member firms, *id*. ¶ 191; "govern[s] and enforce[s] standards across PwC member firms," *id*. ¶ 197; and houses "four governance bodies . . . [that] provide a global governance structure," *id*. The governance bodies include a "Network Leadership Team," which plaintiffs claim functions "effectively [as] the Board of Directors and [is] comprised of five members," including one individual who serves as a Chairman and CEO. *Id*. ¶ 194. Plaintiffs allege that PwC[2] produces a Global Annual Review that provides aggregate results for PwC member firms, such as the total number of employees across all PwC member firms, worldwide revenue, and "statistics about PwC's clients." *Id*. ¶ 198.

Beyond these general structural observations, the Amended Complaint offers only conclusory allegations that PwCIL had "direct and supervisory involvement and control in the day-to-day operations" of the PwC Member Firms, and "had the power to influence and control and did influence and control, directly or indirectly" the Optimal SUS audits. Am. Compl. ¶¶ 673-74; *see id*. ¶¶ 197, 545, 578. Critically, the Amended Complaint does not contain a single factual allegation that PwCIL was ever involved, indirectly or directly, with *any* of the challenged audits of Optimal SUS: Plaintiffs do not allege (i) that PwCIL ever communicated with or provided services to Optimal SUS or its investors; (ii) that PwCIL ever supervised or directed the work of the PwC Member Firms that were allegedly involved in the audits of Optimal SUS; or (iii) that PwCIL ever communicated with the PwC Member Firms about the

---

[2]     Plaintiffs define "PwC" as "all PricewaterhouseCoopers entities." Am. Compl. ¶ 191. The Global Annual Review, which the Amended Complaint cites selectively, defines "PwC" as "the network of member firms of PricewaterhouseCoopers International Limited (PwCIL), *each of which is a separate and independent legal entity*." *Id*. Ex. 26 at 3 (emphasis added).

audits of Optimal SUS.  In short, while insisting that PwCIL must have controlled the Optimal SUS audits, plaintiffs do not begin to articulate what authority PwCIL had over the auditing activities much less allege any actual exercise of that purported authority.

## ARGUMENT

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiffs must allege facts that state "a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1950 (2009).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Instead, plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (noting that *Twombly* retired the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" pleading standard).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

## I.    Plaintiffs Have Failed To State A Claim Of Vicarious Liability Against PwCIL

Plaintiffs do not allege that PwCIL was itself negligent in any way in connection with the Optimal SUS audits.  Plaintiffs instead assert liability under common law respondeat superior principles, alleging, under both Florida law and New York law, that "[b]y virtue of PwC International's control, . . . PwC International is liable for the gross negligence or negligence of PwC Ireland, PwC U.S., and PwC Bermuda."  Am. Compl. ¶ 545 (Florida law); *id*. ¶ 578 (New York law).  Assuming for purposes of this Motion to Dismiss that Florida or New York law applies—and PwCIL submits that, in fact, foreign law governs these claims[3]—plaintiffs' claims against PwCIL must be dismissed for two reasons.  First, as shown in the memoranda submitted

---

[3]      PwCIL will brief the choice of law issue at a later date if necessary.

by PwC Ireland and PwC U.S., which are incorporated herein by reference,[4] plaintiffs have failed to plead adequately the underlying negligence or gross negligence of the purported agents, namely the PwC Member Firms.  *See Halenda v. Habitat for Humanity Int'l, Inc.*, 125 F. Supp. 2d 1361, 1367 (S.D. Fla.) ("Absent negligence on the part of [the agent] there is no vicarious liability to impose upon [the principal] for her conduct."), *aff'd*, 245 F.3d 794 (11th Cir. 2000); *Mars v. Diocese of Rochester*, 763 N.Y.S.2d 885, 887 (N.Y. Sup. Ct. 2003); *see also* Mem. of Law of PricewaterhouseCoopers LLP in Supp. of Mot. to Dismiss the Consolidated Am. Class Action Compl. at 8-18; Mem. of Law of PricewaterhouseCoopers Ireland in Supp. of Mot. to Dismiss the Consolidated Am. Class Action Compl. at 23-28 ("PwC Ireland Mem.").  Second, plaintiffs have failed adequately to plead the agency relationship, most notably by failing to offer sufficient allegations that PwCIL controlled the PwC Member Firms with respect to the relevant Optimal SUS audits.

### A.     To State A Claim Of Vicarious Liability, Agency Allegations Must Be Directed To The Underlying Misconduct

To allege a principal-agent relationship between PwCIL and the PwC Member Firms on a theory of actual agency,[5] plaintiffs must plead three elements: (1) the principal's acknowledgement that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent.  *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009) (applying Florida law); *Goldschmidt v. Holman*,

---

[4]     PwC Bermuda has moved for an extension of time to respond to the Amended Complaint.  PwCIL anticipates similarly incorporating pertinent arguments contained in any motion to dismiss filed by PwC Bermuda.

[5]     To the extent that plaintiffs purport to ground their claims on a theory of apparent agency rather than actual agency, the claims likewise fall short.  Plaintiffs would need to allege: (1) a representation by PwCIL that it authorized the PwC Member Firms to act as its agent in preparing the audits; (2) that plaintiffs relied on that representation; and (3) a change in plaintiffs' position in reliance on the representation.  *See Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60080-Civ, 2008 WL 926512, at *7 (S.D. Fla. Mar. 31, 2008) (citing *Roessler v. Novak*, 858 So. 2d 1158, 1161-62 (Fla. Dist. Ct. App. 2003)); *see also Sampson v. Contillo*, 865 N.Y.S.2d 634, 637 (N.Y. App. Div. 2008).  Plaintiffs make no effort to allege facts supporting such a claim.

571 So. 2d 422, 424 n.5 (Fla. 1990).[6]  Each of these elements must connect the agency relationship to the underlying conduct, in this case the audits of Optimal SUS.

With respect to the first two elements, the plaintiff must allege that the principal acknowledged and that the agent accepted that the agent will act for the principal with respect to the challenged activities, here the audits of Optimal SUS.  *See Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919, at *5 (S.D.N.Y. Nov. 26, 2008) (dismissing vicarious liability claims in part because the "second amended complaint does not allege any 'manifestation' on the part of [the alleged principal] that [the alleged agent] was acting as its agent when the audits were performed"); *see also Pardo v. Tanning Research Labs., Inc.*, 996 F. Supp. 1222, 1225 (M.D. Fla. 1998) ("Under Florida law, actual agency occurs when the principal specifically authorizes its agent to take certain actions."), *aff'd*, 170 F.3d 187 (11th Cir. 1999).

Even where acknowledgement and acceptance are sufficiently pled, plaintiffs must also adequately plead that the principal *controls* the agent—an element "critical to the determination of agency."  *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1320 (S.D. Fla. 2006) (citing *State v. American Tobacco Co.*, 707 So. 2d 851, 854 (Fla. Dist. Ct. App. 1998)), *aff'd*, 218 F. App'x 950 (11th Cir. 2007); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004) ("There is no agency relationship where the alleged principal has no right of control over the alleged agent." (citation omitted)).  The allegations of control must likewise be connected to the underlying conduct at issue.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006) (agency relationship depends on principal's control of the "undertaking" that is the subject of the agency); *Orlinsky v. Patraka*, 971 So. 2d 796, 800-01 (Fla. Dist. Ct. App. 2008) (noting that "an agency relationship does not

---

[6]     The requirements for pleading actual agency under New York law are nearly identical to the requirements under Florida law as set forth above.  *See Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919, at *2 (S.D.N.Y. Nov. 26, 2008) (applying similar test under New York law); *Pensee Assocs. Ltd. v. Quon Indus., Ltd.*, 660 N.Y.S.2d 563, 566-67 (N.Y. App. Div. 1997).  Assuming, *arguendo*, that either Florida or New York law applies, because there is no conflict this Court need not engage in a choice of law analysis, but rather can analyze the claims together.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009).

exist unless the principal has a right to control the operative details of the agent's work," and finding no agency relationship where evidence of alleged right to control was not connected to conduct underlying plaintiff's claims); *cf. Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003) (holding on summary judgment that no agency relationship existed where plaintiff provided no evidence that alleged principal "controlled [alleged agent] during the settlement negotiations" that were the subject of the lawsuit). To state a claim of vicarious liability relating to an audit, therefore, the complaint must allege that the supposed principal (PwCIL) controlled the supposed agent (the PwC Member Firms) with respect to the challenged audits. *See Star Energy*, 2008 WL 5110919, at *5; *Nuevo Mundo*, 2004 WL 112948, at *5.

> **B.**     **The Amended Complaint Fails To Allege Any Connection Between PwCIL And The Underlying Audits On Which Plaintiffs Base Their Negligence Claims**

Plaintiffs allege no connection between PwCIL and the underlying Optimal SUS audits sufficient to establish the elements of actual agency, and in turn, to state a claim of vicarious liability against PwCIL. Plaintiffs simply describe the classic umbrella membership structure of global accounting networks, which is a consequence of rules and regulations in foreign jurisdictions that restrict the right to practice accountancy at the local level.[7] Courts have repeatedly rejected the membership structure of global accounting networks as a sufficient basis for vicarious liability.

Plaintiffs' allegations concerning PwCIL fall into four categories:

- *PwCIL is part of a single, unified PwC entity*: PwCIL's "literature and its global Website refer to its constituent members," and the 2008 "Global Annual Review" states that "the terms PricewaterhouseCoopers, PwC, *our*

---

[7]     *See* World Trade Organization, Council for Trade in Services, Accountancy Services: Background Note by the Secretariat (December 4, 1998) at 1, *available at* www.wto.org/english/tratop_e/serv_e/w73.doc ("Perhaps the most significant issue in respect to international trade in accountancy services is the widespread nature of local qualification and licensing requirements, both in regard to individual practitioners and as conditions for the ownership and management of firms. The response of the largest accountancy entities, notably the 'Big Five' . . . , has been to form international networks of local firms in an attempt to overcome the effects of these and other restrictive national regulations.").

and *we* are used to refer to the network of member firms." Am. Compl. ¶ 191; *see also id*. ¶ 539 ("PwC presents itself to the public as a unified entity.").[8]

- *PwC is structured like a corporation*: "[T]he Global Annual Review provides aggregate results for PwC that are the hallmarks of the annual report of any Fortune 500 company." *Id*. ¶ 198. "PwC has one chairman and CEO, Mr. DiPiazza, and member firms have obligations to PwC." *Id*. ¶ 193. "The Global Annual Review further confirms that the network is structured like a corporation." *Id*. ¶ 194 (citations omitted).

- *PwC is structured to give PwCIL centralized control*: " [F]our governance bodies (the Network Leadership Team, Network Executive Team, Global Board, and Strategy Council) provide a global governance structure that is housed within PwC International." *Id*. ¶ 197; *see also id*. ¶¶ 545, 578 (*PwCIL* controls the member firms "through the Global Board, Network Leadership Team or Strategy Council."). "The Global Annual Review leaves no doubt that PwC functions as one integrated entity with centralized control." *Id*. ¶ 192.

- *PwCIL imposes standards and obligations for the member firms to follow*: "The Network Leadership Team is effectively the Board of Directors," as it "sets the strategy and standards that the PwC network will follow." *Id*. ¶ 194 (emphasis omitted). "PwC International controls its agents through a series of agreements that govern and enforce standards across PwC member firms." *Id*. ¶ 197. *PwCIL* "impos[es] . . . [a] Code of Conduct over its member firms." *Id*. ¶¶ 545, 578.

These allegations merely describe the existence of an international accounting organization and PwCIL's role as a coordinating entity. Yet courts have long discredited the generic assertion that member firms in an accounting organization constitute "one firm," and so either automatically have an agency relationship with or control their constituent components with respect to a particular audit. *See, e.g., In re Royal Dutch/Shell Transp. Secs. Litig.*, 380 F. Supp. 2d 509, 570-72 (D.N.J. 2005) (dismissing claims against PwCIL; "It is well recognized that [m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name." (quotation marks and citation omitted)); *In re Lernout & Hauspie Secs. Litig.*, 230 F.

---

[8]      Plaintiffs carefully ignore the express disclaimers in the Global Annual Review stating that PwCIL and the member firms are each "separate and independent legal entit[ies]." Am. Compl. Ex. 26 at 3.

Supp. 2d 152, 171, 173 (D. Mass. 2002) (dismissing claim against KPMG International because despite allegations seeking to portray KPMG International and its member firms as a "unitary global entity," plaintiffs did not adequately allege that collaborations on audits by member firms occurred "subject to the control of KPMG International"); *In re WorldCom, Inc. Secs. Litig.*, No. 02 Civ. 3288, 2003 WL 21488087, at *10 (S.D.N.Y. June 25, 2003) (dismissing claims against accounting entity because "bare allegations" that it was "umbrella organization for its member firms worldwide" are insufficient to plead that member firm was acting as accounting entity's agent when it conducted the audits).[9]

  Two cases showcase the inadequacies in plaintiffs' cursory allegations of control. *In re Lernout & Hauspie Securities Litigation*, 230 F. Supp. 2d at 171-72, makes clear that the allegations of PwCIL's global role and of the PwC Member Firms' collaboration do not provide the basis for a claim against PwCIL. In *Lernout*, the plaintiffs alleged, similar to the allegations here, that KPMG International held itself out as a "unitary global entity," and that, in this role, it provided to its member firms a "global performance management process" and "proprietary, leading-edge tools" including an "audit methodology." The plaintiffs in *Lernout* also alleged, as plaintiffs do here, that various member firms collaborated on aspects of the audits at issue. *Id*. at 173. In dismissing the claims against KPMG International, the court observed that none of the plaintiffs' allegations "support[ed] the notion that such collaborations occurred at the behest of, on behalf of, under the direction of, or subject to the control of KPMG International." *Id*. at 173. The same is true here: plaintiffs purport to allege two isolated instances of collaboration by PwC

_____

[9]  *See also Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, No. Civ.A. 00-5965, 2005 WL 1365772, at *8 (D.N.J. June 8, 2005) (dismissing claims against KPMG U.S. for acts of affiliated firm based upon "one firm" theory); *Skidmore Energy, Inc. v. KPMG LLP*, No. CIV.A.3:03CV2138-B, 2004 WL 3019097, at *3-*5, *12 (N.D. Tex. Dec. 28, 2004) (dismissing claims against KPMG LLP based upon alleged conduct of Moroccan member firm where plaintiffs alleged that "KPMG acted and continues to act as a single enterprise"); *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 89-90 (D. Mass. 2002) (dismissing claims against KPMG Singapore and rejecting theory that all KPMG entities constitute one worldwide firm or agents of one another).

Ireland, PwC Bermuda, and PwC U.S., *see, e.g.*, Am. Compl. ¶¶ 250, 263, but do not allege that PwCIL initiated, participated in, or in any way supervised or controlled those interactions.

*Star Energy* demonstrates even more clearly the evident shortcomings of the Amended Complaint.  *Star Energy* dismissed claims that RSM International, "a worldwide network of professional services firms," was liable for the actions of RSM Top-Audit, a member firm accused of fraud.  2008 WL 5110919, at *1.  The complaint there included allegations (1) that a footer in the business plan referenced RSM International; (2) that RSM International invited companies to contact its member firms through an online directory on its website; (3) that the audited company contacted RSM International, which then notified the member firm of the inquiry; (4) that RSM International controlled the auditing actions of its member firms through the use of a common manual of auditing and a "Compliance Committee"; (5) that RSM International periodically audited the work of its members to ensure compliance with its strict procedures; and (6) that RSM International "controlled [the member firm's] eligibility for membership and ability to use the . . . brand name."  *Id.* at *1, *3, *5.

The agency allegations in *Star Energy* were extensive when compared to the limited agency allegations in the Amended Complaint, which includes PwCIL as an apparent afterthought.  The significantly weaker allegations linking PwCIL to the PwC Member Firms, unlike the allegations in *Star Energy*, include nothing relating to the audits or clients at issue such as any allegations of contacts between PwCIL and the audit client.  Given that the *Star Energy* complaint was dismissed because it "fails to allege that RSM International had any control over RSM Top-Audit in its dealings with Star Energy," *id.* at *4,[10] it follows, *a fortiori*, that the instant Amended Complaint must likewise be dismissed as against PwCIL.

---

[10]     As *Star Energy* observed, there was no allegation that "RSM Top-Audit sought help from RSM International or that RSM International exercised any authority over the audit of Star Energy," and "the business plans, audits, and opinions were already provided to Star Energy by the time RSM International requested the response letter from RSM Top-Audit."  2008 WL 5110919 at *5.

The few cases where courts have found sufficient allegations of control in the accounting context are readily distinguishable because, for example, the complaint included allegations of the principal's exercise of control over the very audits at issue.  In *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278, 294 (S.D.N.Y. 2005), the plaintiffs alleged that a Deloitte Italy ("DT-Italy") partner sought "direction and help" from Deloitte Touche Tohmatsu ("DTT") and that DTT directed the removal of auditors working on the Parmalat audit.  In the same case, the plaintiffs also alleged that Grant Thornton International ("GTI") investigated, disciplined, and ultimately expelled Grant Thornton Italy ("GT-Italy") and certain of its employees from the Grant Thornton organization in connection with the allegedly fraudulent audit.  *Id.* at 300-01. Based on these specific allegations, the court held that the plaintiffs had sufficiently pled that DTT controlled DT-Italy and that GTI controlled GT-Italy, and declined to dismiss the complaint.[11]  *See also Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284, 00 Civ. 2498, 2002 WL 826847, at *2 (S.D.N.Y. May 2, 2002) (allowing plaintiffs to amend complaint after a previous dismissal because plaintiffs alleged an agency relationship between DTT and the individual partner of Deloitte & Touche Bermuda ("DTB") who was in charge of the audit at issue, where DTB partner acted as DTT's "Asset Global Management Contact" when he signed the audits). And in *Banco Espirito Santo International Ltd. v. BDO International, B.V.*, 979 So. 2d 1030, 1033 (Fla. Dist. Ct. App. 2008), the court held that whether an agency relationship existed

---

[11]     The court later denied motions for summary judgment made by both DTT and GTI, focusing in part on evidence that both entities participated in the audits at issue.  *See In re Parmalat Secs. Litig.*, 594 F. Supp. 2d 444, 453 (S.D.N.Y. 2009) (denying summary judgment for DTT on agency question where "plaintiffs d[id] not rely upon DTT's structure alone," but also put forth evidence that "DTT exercised . . . authority in the specific context of the Parmalat engagement"); *In re Parmalat Secs. Litig.*, 598 F. Supp. 2d 569, 576-78 & n.62 (S.D.N.Y. 2009) (holding that plaintiffs demonstrated genuine issue of material fact that GTI controlled GT-Italy, observing that GTI caused the suspension of two GT-Italy auditors and that GTI subsequently terminated GT-Italy's member firm agreement).  Notably, the court recently granted summary judgment for GTI and GT-US on *in pari delicto* grounds as against certain plaintiffs in the consolidated cases, "moot[ing] the question whether they are liable vicariously for misconduct by GT-Italy."  *In re Parmalat Secs. Litig.*, --- F. Supp. 2d ----, 2009 WL 2996509, at *5, *18 (S.D.N.Y. Sept. 21, 2009).

between BDO International and BDO Seidman was a question for the jury, based on many factors, including evidence that BDO International's governing Articles of Association included among its "'objects' the management and control of the member firms."[12]

The allegations of participation and control that sufficed to allege an agency relationship in cases such as *Parmalat* are conspicuously absent here.  While plaintiffs attempt to buttress the allegations against PwCIL by conflating legally distinct and autonomous PwC entities—referring to them collectively as "PwC"—the allegations concerning PwCIL are readily distinguishable from those concerning the PwC Member Firms:  plaintiffs do not allege that PwCIL was consulted on the relevant audits, that it communicated with any of the PwC Member Firms concerning those audits, or that it participated in, supervised, or intervened in any way on the audits or the personnel that performed them.  *See* Am. Compl. ¶¶ 191-98.[13]  Lacking any relevant factual allegations, plaintiffs nonetheless conclusorily assert that PwCIL had control over the Optimal SUS audits, *see id*. ¶ 673 (addressing Section 20(a) claims), but such "legal conclusion[s]" are "not entitled to the assumption of truth," *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).

Because plaintiffs have alleged "no facts . . . which suggest that [PwCIL] ever participated in the decision as to how the audit reports . . . were completed, and certainly none which would support an inference that [PwCIL] . . . in fact contributed to . . . those audit

---

[12]     At trial, the jury found for BDO International, concluding that BDO Seidman had not acted as its agent.  *See* Jim Loney, *BDO International Found Not Liable In Key Audit Case*, Reuters, June 18, 2009, *available at* http://www.reuters.com/article/idUSN1841471220090618?pageNumber=1&virtualBrandChannel=0 (last visited November 18, 2009).

[13]     Plaintiffs point to International Standards on Auditing ("ISAs"), which they allege formed the basis for the Optimal SUS audits, *see* Am. Compl. ¶¶ 214-37, but the ISAs are professional standards promulgated by the International Federation of Accountants ("IFAC"), and therefore are irrelevant to whether PwCIL controlled the PwC Member Firms.  *See* http://www.ifac.org/IAASB/Pronouncements.php#Standards.  Plaintiffs also point to a "practice guide concerning audits of hedge funds" allegedly intended to provide "guidance for auditors of fund-of-funds," Am. Compl. p. 87 & ¶ 238, but nowhere allege that PwCIL prepared or enforced this guide.

reports," plaintiffs have failed adequately to plead control.[14]  *Nuevo Mundo*, 2004 WL 112948, at

*5.  *See also In re Royal Dutch/Shell Transport Secs. Litig.*, 380 F. Supp. 2d at 571 (dismissing

vicarious liability claim where PwCIL had "done no auditing work and ha[d] not signed any

financial assessments regarding" the plaintiff).

Plaintiffs have likewise failed to allege the other two necessary elements of agency:

acknowledgement and acceptance of the agency relationship pertaining to the Optimal SUS

audits.  In fact, there is no allegation that PwCIL and the PwC Members Firms had *any*

communications regarding the Optimal SUS audits.  Plaintiffs allege that PwCIL and the

member firms have agreed to be part of the "PwC global network," Am. Compl. ¶ 192, but this

bare fact does not suffice to plead a "manifestation on the part of [PwCIL] that [the member

firms were] acting as its agent when the audits were performed," *Star Energy*, 2008 WL

5110919, at *5.

## II.   Plaintiffs Have Failed To State A Claim Under Section 20(a) Of The Exchange Act

Plaintiffs' Section 20(a)[15] claim against PwCIL also fails.  As an initial matter, plaintiffs

do not state a claim because they fail adequately to allege that PwC Ireland[16] committed a

---

[14]    Plaintiffs also do not allege that PwCIL is referenced in the audit opinions themselves.
*Compare* Am. Compl. ¶ 202 (alleging that audit opinion is signed only by
"PricewaterhouseCoopers, Dublin") *with Star Energy*, 2008 WL 5110919, at *1, *3 (dismissing
claim of vicarious liability against RSM International even where business plan provided to
plaintiffs contained a "prominent footer at the bottom center of each page which read 'RSM
International' directly above 'RSM Top-Audit'").

[15]    Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), provides that "[e]very person
who, directly or indirectly, controls any person liable under any provision of this chapter or of
any rule or regulation thereunder, shall also be liable jointly and severally with and to the same
extent as such controlled person . . . unless the controlling person acted in good faith and did not
directly or indirectly induce the act or acts constituting the violation or cause of action."

[16]    Plaintiffs bring an underlying Rule 10b-5 claim solely against PwC Ireland.  *See* Am.
Compl. Count 34.  They nonetheless appear to assert Section 20(a) liability against PwCIL based
on the conduct of PwC Ireland as well as PwC U.S. and PwC Bermuda.  *See id.* ¶¶ 673-74.  But
because plaintiffs nowhere allege that PwC U.S. or PwC Bermuda committed primary Exchange
Act violations, the conduct of those entities cannot form the basis for plaintiffs' Section 20(a)
claims.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *Theoharous v.
Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001).

primary violation.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) ("[A] plaintiff adequately pleads a § 20(a) claim only if the primary violation is adequately pleaded."); *see also* PwC Ireland Mem. at 16-21.  The Section 20(a) claim against PwCIL must be dismissed for the additional reasons that plaintiffs have not adequately alleged that PwCIL controlled PwC Ireland or that PwCIL culpably participated in the alleged underlying securities law violation.[17]

### A.    Plaintiffs Have Not Adequately Alleged The Element Of "Control"

To establish liability as a controlling person under Section 20(a), the Eleventh Circuit requires that the defendant "had the power to control the general business affairs" of the controlled person, and "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in [the] primary liability" of the controlled person. *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001) (citation omitted); *Mizzaro*, 544 F.3d at 1237; *Durgin v. Mon*, No. 06-61844-CIV, 2009 WL 3055216, at *14 (S.D. Fla. Sept. 21, 2009).  The Eleventh Circuit has left open the question whether "the power to control the general affairs of the entity primarily liable means 'simply abstract power to control, or actual exercise of the power to control.'"  *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 723 n.14 (11th Cir. 2008) (citing *Brown v. Enstar Group Inc.*, 84 F.3d 393, 397 n.6 (11th Cir. 1996)).  If the Court elects to confront the issue, PwCIL respectfully submits that the Court should join the Courts of Appeals that have concluded that plaintiffs must plead the *actual exercise* of control, rather than

---

[17]    PwCIL joins several other defendants in arguing that the foreign conduct alleged here is not subject to the jurisdiction of the Exchange Act.  *See* Joint Mot. to Dismiss the Consolidated Am. Class Action Compl. for Extraterritorial Application of the Securities Exchange Act and Mem. of Law in Supp. Thereof submitted by defendants Optimal Investment Services, Manuel Echeverría Falla, Anthony L.M. Inder Rieden, Brian Wilkinson, Banco Santander, S.A., and PwC Ireland ("Joint Motion to Dismiss for Extraterritorial Application of the Exchange Act"). PwCIL thus respectfully asks this Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the Section 20(a) claim against PwCIL on that independent ground.  Additionally, PwCIL agrees with PwC Ireland that this case should be dismissed for *forum non conveniens*. *See* PwC Ireland Mem. at 30-34.  Should the Court grant the motion to dismiss for *forum non conveniens* without reaching PwCIL's motion to dismiss the Amended Complaint, PwCIL will consent to jurisdiction in a case filed in Ireland by the plaintiffs to this action for the limited purpose of litigating the particular claims brought by plaintiffs in this action.

the more abstract power to control.[18]  The Court, however, need not reach the question, as plaintiffs have not adequately alleged that PwCIL either actually exercised any control over or had the authority to exercise control over the PwC Member Firms, and certainly have not adequately alleged that PwCIL could control the Optimal SUS audits.

Plaintiffs' allegations of control are primarily structural, "one-firm" allegations.  *See* Am. Compl. ¶¶ 191-198; *see also* Part I.B., *supra*.  Such allegations fare no better under Section 20(a) than they do under common law agency principles:  Reliance on the "'one-firm,' unified-company theory" does not suffice to plead Section 20(a) control.  *In re Asia Pulp & Paper Secs. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003).  Beyond the structural, "one firm" allegations, plaintiffs offer only conclusory assertions that PwCIL had the power to influence and control "the content and dissemination of the audit opinions of Optimal SUS," and "had direct and supervisory involvement and control in the day-to-day operations, audit procedures, audit work, and audit standards" of the member firms, Am. Compl. ¶¶ 673-74.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1949.  *See Owens v. Gaffken & Barringer Fund, LLC*, No. 08 Civ. 8414, 2009 WL 3073338, at *12 (S.D.N.Y. Sept. 21, 2009) (dismissing Section 20(a) claim under *Iqbal*); *Bruhl v. Price WaterhouseCoopers Int'l*, No. 03-23044-Civ., 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) ("Plaintiff's claim for control person liability under 20(a) fails because there are no specific allegations of actual control . . . , but only conclusory allegations.").

Although the case law in the Eleventh Circuit is sparse as to what facts suffice to allege control under Section 20(a), other precedent underscores the deficiencies in plaintiffs' pleading. In *Asia Pulp*, 293 F. Supp. 2d at 396, the court held that the plaintiffs "failed to plead facts that

---

[18]     *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) ("To meet the control element, the alleged controlling person must not only have the general power to control the company, but must also actually exercise control over the company."); *Donohoe v. Consolidated Operating & Prod. Corp.*, 30 F.3d 907, 911-12 (7th Cir. 1994); *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985); *see also Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992).  *But see In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 130 (4th Cir. 2009).

would support any . . . inference" of control, for Section 20(a) purposes, by Andersen Worldwide Société Coopérative ("AWSC") of Andersen Singapore.  Much like the Amended Complaint's reference to the Network Leadership Team's "strategy and standards" for member firms, Am. Compl. ¶ 194, the plaintiffs there asserted merely that AWSC "set 'professional standards and principles' under which the individual offices operated," and thereby "directed the 'management and policies' of Andersen Singapore," 293 F. Supp. 2d at 396.  *Asia Pulp* deemed these allegations "inadequate," given that the *Asia Pulp* plaintiffs—like plaintiffs here—failed to allege that the umbrella organization "was able to control or in any way influence the particular audits conducted or opinions offered by its individual members firms."  *Id*.  And in *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002), the First Circuit affirmed the dismissal of a claim seeking to hold controlling shareholders liable under Section 20(a) for the actions of a corporation, noting that while the controlling shareholders "have the power to elect two-third of the directors . . . , they have no direct control over the management and operations of the company."  Plaintiffs here have alleged that PwCIL houses a corporate governance structure responsible for promulgating administrative standards and the like, Am. Compl. ¶ 197, but have failed to allege specifically how this gives PwCIL "control over the management and operations of" PwC Ireland when that firm provides auditing services to particular clients.  Indeed, plaintiffs allege no "facts that indicate that [PwCIL was] actively participating in the decisionmaking processes of" PwC Ireland in any Optimal SUS audit, *Aldridge*, 284 F.3d at 85.

In short, nothing in the Amended Complaint plausibly supports the inference that PwCIL "had the power to control the general business affairs" of PwC Ireland, and "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability" of PwC Ireland.  *Theoharous*, 256 F.3d at 1227.  None of the structural allegations—whether "a series of agreements that govern and enforce standards across PwC member firms," or "annual compliance confirmation[s]" signed by "Territory Senior Partners," Am. Compl. ¶¶ 194, 197—connects PwCIL to the Optimal SUS audits.  Plaintiffs do not even allege what these standards are, or how they are relevant to the Optimal SUS audits, much less to

the purported shortcomings of those audits.[19]  Nor do plaintiffs allege that PwCIL enforced any

standards in connection with the Optimal SUS audits.  Plaintiffs' failure to allege that PwCIL

reviewed or approved the Optimal SUS audit opinions, or even that it had the authority to do so,

further dooms their Section 20(a) claim just as it did their vicarious liability claims.  *Cf. In re*

*Spear & Jackson Secs. Litig.*, 399 F. Supp. 2d 1350, 1360 (S.D. Fla. 2005) (declining to dismiss

Section 20(a) claim against CEO (and majority shareholder) of defendant company where CEO

"signed (and thus presumably reviewed) the [allegedly fraudulent] financial statements").

Plaintiffs' abject failure to plead control is not surprising: "extensive domestic regulation [of

accounting firms] makes it impossible to have unified ownership, management and control on an

international scale."  World Trade Organization, Council for Trade in Services, Accountancy

Services:  Background Note by the Secretariat at 6 (December 4, 1998) at 6, *available at*

www.wto.org/english/tratop_e/serv_e/w73.doc.  The Section 20(a) claim should therefore be

dismissed.

## B.      Plaintiffs Fail To Plead Culpable Participation By PwCIL

Several courts have incorporated into the pleading requirements for a Section 20(a) claim

the obligation to plead "that the defendant was, in some meaningful sense, a culpable participant

in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108

(2d Cir. 2007) (citing *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996));

*S.E.C. v. J.W. Barclay & Co.*, 442 F.3d 834, 841 n.8 (3d Cir. 2006).  *But see, e.g.*, *Metge v.*

*Baehler*, 762 F.2d 621, 631 (8th Cir. 1985) (rejecting "culpable participation" requirement).

Culpable participation typically requires conduct rising to at least the level of recklessness.  *See,*

*e.g., Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y.

---

[19]     Plaintiffs mention a "fifty-page audit guide for auditing hedge funds" that allegedly "was
to provide guidance for auditors of fund-of-funds."  Am. Compl. ¶ 238.  However, the document
makes clear that its purpose was to "summarize and highlight the AICPA's interpretive guidance
on alternative investments" and "to address, from a practical perspective, the issues of most
importance to officers, senior management, general partners, fund managers, board members and
auditors of many diverse entities . . . ."  *Id*. Ex. 28 at p. 5.  Moreover, plaintiffs do not allege that
the guide was prepared by PwCIL.  Am. Compl. p. 87; *id*. Ex. 28 at p. 56.

2008).  The Eleventh Circuit has not directly confronted the issue, except in dicta,[20] and this Court need not resolve the question here given that plaintiffs' Section 20(a) claim should be dismissed for failure to allege control by PwCIL.  If the Court nonetheless chooses to address the issue, it should hold that plaintiffs' failure to allege any culpable participation by PwCIL in the underlying audits warrants dismissal of the Section 20(a) claim.

Because the Eleventh Circuit referred to "District Courts in the Second Circuit" in its dicta on the parameters for pleading culpable participation, *Laperriere*, 526 F.3d at 724 & n.16, it would be appropriate for this Court to consider such precedent here.  Within the district courts in the Second Circuit, the "weight of well-reasoned authority is that to withstand a motion to dismiss a section 20(a) controlling person liability claim, a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context." *Edison Fund*, 551 F. Supp. 2d at 231 (internal quotation marks omitted).  In 2009 alone, courts in the Southern District of New York have held at least ten times that a plaintiff must plead culpable participation in order to state a claim under Section 20(a)—and no court in that district has held to the contrary.  *See, e.g.*, *Ellington Mgmt. Group, LLC v. Ameriquest Mortgage Co.*, No. 09 Civ. 0416, 2009 WL 3170102, at *4 (S.D.N.Y. Sept. 29, 2009).[21]  Other district courts have likewise

_____

[20]    *See Laperriere*, 526 F.3d at 724-25 (noting in the  "BACKGROUND" section of a case addressing statutory interpretation of a damages provision that Section 20(a) is a derivative liability statute for which there is a good faith affirmative defense, but excluding intentionality as a requirement and so leaving open the possibility that liability under Section 20(a) requires a showing of recklessness); *see also Enstar Group, Inc.*, 84 F.3d at 396-97 & n.5 (suggesting that culpable participation is not required but finding that plaintiff had failed to provide evidence of control and thus not relying on the culpable participation discussion); *Durgin*, 2009 WL 3055216, at *14 & n.6 (declining to adopt culpable participation test in light of *Laperriere*, but dismissing Section 20(a) claim based on failure to plead primary violation, and so not relying on culpable participation discussion).

[21]    *See also Owens*, 2009 WL 3073338, at *12; *In re Citigroup Auction Rate Secs. Litig.*, Nos. 08 Civ. 3095, 09 md 2043, 2009 WL 2914370, at *10 (S.D.N.Y. Sept. 11, 2009); *Aimis Art Corp. v. Northern Trust Secs., Inc.*, 641 F.Supp.2d 314, 319 (S.D.N.Y. 2009); *Police & Fire Ret. Sys. of Detroit v. Safenet, Inc.*, --- F. Supp. 2d ----, 2009 WL 2391849, at *10 (S.D.N.Y. Aug. 5, 2009); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 517 (S.D.N.Y. 2009); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2009 WL 1492196, at *8 (S.D.N.Y. May 27, 2009); *Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931, 2009 WL 928279, at *12 (S.D.N.Y. Mar. 30,

reached this conclusion since the Eleventh Circuit decided *Laperriere*. *See, e.g.*, *In re Schering-Plough Corp./Enhance Secs. Litig.*, No. 08-CV-397, 2009 WL 2855457, at *3 (D.N.J. Sept. 2, 2009); *First New York Secs., L.L.C. v. United Rentals, Inc.*, --- F. Supp. 2d ---, 2009 WL 2641473, at *9 (D. Conn. Aug. 24, 2009).[22]

Should this Court choose to confront the question, PwCIL respectfully submits that the Court should conclude that plaintiffs must plead culpable participation by PwCIL. The intent of Congress in adding Section 20(a) to the Exchange Act "was obviously to impose liability only on those [controlling persons] who are in some meaningful sense culpable participants in the fraud perpetrated by the controlled persons." *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 406 n.5 (S.D.N.Y. 2007) (citing *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973)). This is so in part because an underlying Section 10(b) violation requires an element of culpability, *Lanza*, 479 F.2d at 1299, and Congress "did not intend anyone to be an insurer against the fraudulent activities of another," *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 885 (3d Cir. 1975). *See also Laperriere*, 526 F.3d at 724 (noting that Section 20(a) "is not applicable wherever the fact of control exists," and that Congress explicitly rejected an "insurer's liability" for controlling persons). Given that the Eleventh Circuit has not ruled on the issue and the case law in other courts has evolved since the discussion of the question in dicta, this Court has discretion to conclude that plaintiffs can only impose the burdens of discovery on those controlling persons who are alleged to be culpable participants in the underlying fraud. Here, nothing in the Amended Complaint even comes close to alleging any participation by PwCIL—in fact, there is no claimed link to the Optimal SUS audits whatsoever. This pleading failure also warrants dismissal of the Section 20(a) claim.

---

2009); *In re UBS Auction Rate Secs. Litig.*, No. 08 CV 2967, 2009 WL 860812, at *3 (S.D.N.Y. Mar. 30, 2009); *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405, 2009 WL 174656, at *24 (S.D.N.Y. Jan. 26, 2009).

[22]    *See also In re Mills Corp. Secs. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009); *In re Medtronic Inc., Secs. Litig.*, 618 F. Supp. 2d 1016, 1038-39 (D. Minn. 2009).

## CONCLUSION

For the reasons stated above, and based on the Motions to Dismiss the Amended Complaint filed by PwC Ireland and PwC U.S., and the Joint Motion to Dismiss for Extraterritoral Application of the Exchange Act, the claims in the Amended Complaint against PwCIL should be dismissed with prejudice.

Dated: November 18, 2009                    Respectfully submitted,

                                            /s/ Samuel J. Salario, Jr.

                                            Benjamine Reid (Bar Number 183522)
                                            Samuel J. Salario, Jr. (Bar Number 83460)
                                            CARLTON FIELDS, P.A.
                                            4000 International Place
                                            100 S.E. Second Street
                                            Miami, FL 33131
                                            Telephone: (305) 530-0050
                                            Facsimile: (305) 530-0055
                                            breid@carltonfields.com
                                            ssalario@carltonfields.com

                                            Howard M. Shapiro
                                            Fraser L. Hunter, Jr.
                                            Anne K. Small
                                            Julia M. Lipez
                                            WILMER CUTLER PICKERING
                                                   HALE & DORR LLP
                                            399 Park Avenue
                                            New York, NY 10022
                                            Telephone: (212) 230-8800
                                            Facsimile: (212) 230-8888
                                            howard.shapiro@wilmerhale.com
                                            fraser.hunter@wilmerhale.com
                                            anne.small@wilmerhale.com
                                            julia.lipez@wilmerhale.com
                                            (*pro hac vice* admission to be requested)

                                            *Attorneys for Defendant*
                                            *PricewaterhouseCoopers International*
                                            *Limited*

- 20 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel identified on the attached Service List in the manner specified, via transmission of Notices of Electronic Filing generated by the CM/ECF or first class mail.

By: /s/ Samuel J. Salario, Jr.

**SERVICE LIST**
**In re Santander-Optimal Securities Litigation**
**Case No. 09-20215-CIV-HUCK/O'SULLIVAN**
**U.S. District Court, Southern District of Florida**

| | |
|---|---|
| Michael A. Hanzman<br>**HANZMAN GILBERT LLP**<br>2525 Ponce De Leon Blvd.; Suite 700<br>Coral Gables, FL 33134<br>Telephone: 305-529-9100<br>Facsimile: 305-529-1612<br>mhanzman@hanzmangilbert.com<br>*Attorneys for Lead Plaintiffs*<br>(VIA CM/ECF) | James Jaconette<br>Julie A. Kearns<br>Michael F. Ghozland<br>**COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP**.<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619-231-1058<br>Facsimile: 619-231-7423<br>jjaconette@csgrr.com<br>*Attorneys for Lead Plaintiffs*<br>(VIA CM/ECF) |
| Paul J. Geller<br>Jack Reise<br>Douglas Wilens<br>Stephen R. Astley<br>**COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP**<br>120 E. Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432-4809<br>Telephone: 561-750-3000<br>Facsimile: 561-750-3364<br>pgeller@csgrr.com<br>jreise@csgrr.com<br>dwilens@csgrr.com<br>*Attorneys for Lead Plaintiffs*<br>(VIA CM/ECF) | Harry R. Schafer<br>**KENNY NACHWALTER, P.A.**<br>201 S. Biscayne Blvd., Suite 1100<br>Miami, FL 33131-4327<br>Telephone: 305-373-1000<br>Facsimile: 305-372-1861<br>hrs@kennynachwalter.com<br>*Attorneys for Defendant*<br>*PricewaterhouseCoopers Ireland*<br>(VIA CM/ECF) |

| | |
|---|---|
| Thomas G. Rafferty<br>Antony L. Ryan<br>**CRAVATH, SWAINE & MOORE LLP**<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Telephone: 212-474-1000<br>Facsimile: 212-474-3700<br>trafferty@cravath.com<br>Aryan@cravath.com<br>*Attorneys for Defendant*<br>*PricewaterhouseCoopers Ireland*<br>(VIA CM/ECF) | Joel H. Bernstein<br>Christopher J. Keller<br>Javier Bleichmar<br>Allan I Ellman<br>Stefanie J. Sundel<br>Donald P. Delancy<br>**LABATON SUCHAROW LLP**<br>140 Broadway, 24th Floor<br>New York, NY 10005<br>Telephone: 212-907-0700<br>Facsimile: 212-818-0477<br>jbernstein@labaton.com<br>jbleichmar@labaton.com<br>*Attorneys for Plaintiffs inversions Mar Octava*<br>*Limitada, Santander Investor Group and*<br>*Marcelo Testa*<br>(VIA CM/ECF) |
| Gustavo J. Membiela<br>Samuel A. Danon<br>**HUNTON & WILLIAMS**<br>1111 Brickell Avenue, Suite 2500<br>Miami, FL 33131<br>Telephone: 305-810-2500<br>Facsimile: 305-810-2460<br>gmembiela@hunton.com<br>*Attorneys for Defenants Banco Santander S.A.,*<br>*Banco Santander International, Optimal*<br>*Investments Services S.A., Manuel Falla,*<br>*Anthony Inderrieden and Brian Wilkinson*<br>(VIA CM/ECF) | Jason D. Joffe<br>**SQUIRE SANDERS & DEMPSEY LLP**<br>Wachovia Financial Center<br>200 S. Biscayne Blvd., 40th Floor<br>Miami, FL 33131-2389<br>Telephone: 305-577-7000<br>Facsimile: 305-577-7001<br>jjoffe@ssd.com<br>*Attorneys for Defendants HSBC Securities*<br>*Services (Ireland) Ltd. And HSBC Institutional*<br>*Trust Services (Ireland) Ltd.*<br>(VIA CM/ECF) |
| Traci H. Rollins<br>**SQUIRE SANDERS & DEMPSEY LLP**<br>1900 Phillips Point West<br>777 S. Flagler Drive, Suite 1900<br>West Palm Beach, FL 33401-6198<br>Telephone: 561-650-7256<br>Facsimile: 561-655-1509<br>Trollins@ssd.com<br>*Attorneys for Defendants HSBC Securities*<br>*Services (Ireland) Ltd. And HSBC Institutional*<br>*Trust Services (Ireland) Ltd.*<br>(VIA CM/ECF) | Joaquin P. Terceno<br>Evan A. Davis<br>**CLEARY GOTTLIEB STEEN &**<br>**HAMILTON**<br>One Liberty Plaza<br>New York, NY 10006-1470<br>Telephone: 212-225-2000<br>jterceno@cgsh.com<br>edavis@cgsh.com<br>*Attorneys for Defendants HSBC Securities*<br>*Services (Ireland) Ltd. And HSBC Institutional*<br>*Trust Services (Ireland) Ltd.*<br>(VIA CM/ECF) |

| | |
|---|---|
| Laura Besvinick<br>**HOGAN & HARTSON LLP**<br>Mellon Financial Center<br>1111 Brickell Avenue; Suite 1900<br>Miami, FL  33131<br>Telephone:  305-459-6500<br>Facsimile:  305-459-6550<br>lbesvinick@hhlaw.com<br>*Attorneys for Defendant*<br>*PricewaterhouseCoopers, a Bermuda*<br>*Partnership*<br>(VIA CM/ECF) | Sanford M. Litvack<br>Dennis H. Tracey, III<br>**HOGAN & HARTSON LLP**<br>875 Third Avenue<br>New York, NY  10022<br>Telephone: 212-918-3000<br>Facsimile: 212-918-3100<br>slitvack@hhlaw.com<br>dhracy@hhlaw.com<br>*Attorneys for Defendant*<br>*PricewaterhouseCoopers, a Bermuda*<br>*Partnership*<br>(VIA CM/ECF) |
| Alan G. Greer<br>Manuel A. Garcia-Linares<br>Melissa Fernandez-Stiers<br>**RICHMAN GREER P.A.**<br>Miami Center – Suite 1000<br>201 S. Biscayne Blvd.<br>Miami, FL  33131<br>Telephone:  305-373-4000<br>Facsimile:  305-373-4099<br>agreer@richmangreer.com<br>mlinares@richamngreer.com<br>mfernandez@richmangreer.com<br>*Attorneys for Defendant*<br>*Pricewaterhousecoopers LLP*<br>(VIA CM/ECF) | Francis A. Bottini, Jr.<br>**JOHNSON BONTTINI, LLP**<br>644 W. Broadway, Suite 1400<br>San Diego, CA  92101<br>Telephone:  619-230-0063<br>*Additional Attorneys for Plaintiffs*<br>**(VIA FIRST CLASS MAIL)** |
| Robert S. Schachter<br>Hillary Sobel<br>**ZWERLING, SCHACHTER &**<br>**ZWERLING LLP**<br>41 Madison Avenue<br>New York, NY  10010<br>Telephone:  212-223-2900<br>*Of Counsel to Plaintiffs*<br>**(VIA FIRST CLASS MAIL)** | Michael P. Carroll<br>Michael S. Flynn<br>James W. Haldin<br>James H.R. Windels<br>**DAVIS POLK & WARDELL**<br>450 Lexington Avenue<br>New York, NY  10017<br>Telephone:  212-450-4547<br>Michael.carroll@davispolk.com<br>Michael.flynn@davispolk.com<br>James.haldin@davispolk.com<br>James.windels@davispolk.com<br>*Attorneys for Defendant*<br>*PricewaterhouseCoopers LLP*<br>(VIA CM/ECF) |