IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-MD-02073-CIV-HUCK/O'SULLIVAN

IN RE BANCO SANTANDER SECURITIES–OPTIMAL
LITIGATION

**REPLY BRIEF IN SUPPORT OF JOINT MOTION BY DEFENDANTS OPTIMAL INVESTMENT SERVICES S.A., MANUEL ECHEVERRÍA FALLA, ANTHONY L.M. INDER RIEDEN, BRIAN WILKINSON, BANCO SANTANDER, S.A. AND PRICEWATERHOUSECOOPERS IRELAND TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR LACK OF EXTRATERRITORIAL APPLICATION OF THE SECURITIES EXCHANGE ACT**

Richard H. Critchlow (Bar No. 155227)
Harry R. Schafer (Bar No. 508667)
**KENNY NACHWALTER, P.A.**
Miami Center – Suite 1100
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
rhc@kennynachwalter.com
hrs@kennynachwalter.com

Thomas G. Rafferty (*Admitted Pro Hac Vice*)
Antony L. Ryan (*Admitted Pro Hac Vice*)
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
trafferty@cravath.com
aryan@cravath.com

*Attorneys for PricewaterhouseCoopers Ireland*

Samuel A. Danon (Bar No. 892671)
Gustavo J. Membiela (Bar No. 0513555)
**HUNTON & WILLIAMS LLP**
Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
sdanon@hunton.com
gmembiela@hunton.com

*Attorneys for Banco Santander, S.A., Banco Santander International, Optimal Investment Services S.A., Manuel Echeverría Falla, Anthony L.M. Inder Reiden, and Brian Wilkinson*

December 23, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

I.  The Alleged Wrongful Conduct Did Not Occur In The United States. ........................... 2

   A.  The Conduct Test Cannot Be Satisfied By a Plaintiff's Subjective
       Investment Objectives. .......................................................................................... 2

   B.  No Wrongful Conduct Under Section 10(b) Is Alleged to Have Occurred
       in the United States. .............................................................................................. 4

II. There Are No Effects in the United States or on U.S. Investors. ..................................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases** Page(s)

*AVC Nederland B.V. v. Atrium Investment P'ship,*
  740 F.2d 148 (2d Cir. 1984) ..................................................................................2-3

*Bersch v. Drexel Firestone, Inc.,*
  519 F.2d 974 (2d Cir. 1975) ..................................................................................5, 7, 8

*Cont'l. Grain (Australia) Pty. Ltd. v. Pac. Oilseeds, Inc.,*
  592 F.2d 409 (8th Cir. 1979) ..................................................................................2

*Cromer Finance Ltd. v. Berger,*
  No. 00 Civ. 2284 (DLC), 2003 WL 21436164 (S.D.N.Y. June 23, 2003) ..................6

*Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London,*
  147 F.3d 118 (2d Cir. 1998) ..................................................................................3, 6

*Grunenthal GmbH v. Hotz,*
  712 F.2d 421 (9th Cir. 1983) ..................................................................................2

*IIT v. Cornfeld,*
  619 F.2d 909 (2d Cir. 1980) ..................................................................................4, 9

*In re Alstom SA Sec. Litig.,*
  406 F. Supp. 2d 346 (S.D.N.Y 2009) ......................................................................4

*In re CP Ships Ltd. Sec. Litig.,*
  578 F.3d 1306 (11th Cir. 2009) ..............................................................................2, 7, 8

*In re Gaming Lottery Sec. Litig.,*
  58 F. Supp. 2d 62 (S.D.N.Y. 1999) .........................................................................6

*In re Vivendi Universal S.A. Sec. Litig.,*
  No. 02 Civ. 5571 (RJH), 2004 WL 2375830 (S.D.N.Y. Oct. 22, 2004) ....................5

*Itoba Ltd. v. LEP Group PLC,*
  54 F.3d 118 (2d Cir. 1995) ....................................................................................2

*Kauthar SDN BHD v. Sternberg,*
  149 F.3d 659 (7th Cir. 1998) ..................................................................................2

*Leasco Data Processing Equip. Corp. v. Maxwell,*
  468 F.2d 1326 (2d Cir. 1972) .................................................................................6

*Morrison v. Nat'l Australia Bank Ltd.,*
  547 F.3d 167 (2d Cir. 2008),
  cert. granted, 78 U.S.L.W. 3319 (U.S. Nov. 30, 2009) (No. 08-1191) ....................2, 5, 7, 8

*Psimenos v. E.F. Hutton & Co.*,
    722 F.2d 1041 (2d Cir. 1983) ............................................................................................3

*Robinson v. TCI/US W. Commc'ns Inc.*,
    117 F.3d 900 (5th Cir. 1997) .........................................................................................2, 5

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977) ..........................................................................................................5

*SEC v. Berger*,
    322 F.3d 187 (2d Cir. 2003) ........................................................................................6, 7-8

*SEC v. Kasser*,
    548 F.2d 109 (3d Cir. 1977) .............................................................................................2

*Tamari v. Bache & Co. (Lebanon) S.A.L.*,
    547 F.Supp. 309 (N.D. Ill. 1982) ...................................................................................3-4

*Zoelsch v. Arthur Andersen & Co.*,
    824 F.2d 27 (D.C. Cir. 1987) ............................................................................................2

## Statutes & Rules

Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b) ..................................................*passim*

Rule 10b-5, 17 C.F.R. § 240.10b-5 ..................................................................................4

Defendants Optimal Investment Services S.A. ("OIS"), Manuel Echeverría Falla ("Echeverría"), Anthony L.M. Inder Rieden ("Inder Rieden"), Brian Wilkinson ("Wilkinson"), Banco Santander, S.A. ("Santander") and PricewaterhouseCoopers Ireland ("PwC Ireland") respectfully submit this joint reply memorandum of law in further support of their motion to dismiss the federal securities claims in the Consolidated Amended Class Action Complaint ("Complaint") on the ground that the Securities Exchange Act of 1934 ("Exchange Act") does not apply to the conduct alleged in the Complaint.

## PRELIMINARY STATEMENT

Plaintiffs concede that the Exchange Act cannot apply to the transactions at issue in this case unless they can satisfy either the "conduct test", the "effects test", or some combination of both. Plaintiffs agree that to satisfy the conduct test, the "wrongful conduct" must have "occurred in the United States", and to satisfy the effects test, the "wrongful conduct" must have "had a substantial effect in the United States or upon United States citizens". (Plf. Br. at 43.)[1] However, Plaintiffs attempt to re-fashion these tests so that a plaintiff's subjective intent to invest in a fund that in turn invested with a U.S. broker could satisfy either test. Plaintiffs' novel theory has no legal basis, and Plaintiffs cannot satisfy the conduct or effects tests. *First*, Defendants' alleged wrongful conduct under Section 10(b) was the making of alleged misrepresentations, which Plaintiffs concede were made outside the United States. *Second*, Plaintiffs concede that no U.S. resident or citizen purchased shares of the Optimal funds at issue and that those shares were not traded on a U.S. exchange; thus, Defendants' alleged wrongful conduct could not have had a substantial effect in the United States or upon U.S. citizens.

---

[1] Citation to Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss are given as (Plf. Br. at __); to the Santander Defendants' and PwC Ireland's Joint Motion to Dismiss the Consolidated Amended Class Action Complaint for Lack of Extraterritorial Application of the Securities Exchange Act and Memorandum of Law in Support Thereof as (Joint Br. at __); and to PwC Ireland's Motion to Dismiss the Consolidated Amended Class Action Complaint and Memorandum of Law in Support Thereof as (PwC Br. at __).

# ARGUMENT

Plaintiffs satisfy neither the conduct nor the effects test. *See In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1313 (11th Cir. 2009).[2]

## I. THE ALLEGED WRONGFUL CONDUCT DID NOT OCCUR IN THE UNITED STATES.

Plaintiffs argue that the conduct test may be met in two ways: (1) by a plaintiff's intent to invest in a fund that purchased stock traded on a U.S. exchange; or (2) by conduct in the United States that is not actionable under Section 10(b). Plaintiffs are wrong.

### A. The Conduct Test Cannot Be Satisfied By a Plaintiff's Subjective Investment Objectives.

Plaintiffs argue that although they purchased shares in Bahamian and Irish funds, they purchased those shares because they knew that those funds were going to give the money to a U.S. broker to invest in securities traded on a U.S. exchange. (Plf. Br. at 45.) Thus, Plaintiffs ask the Court to ignore the fact that they did not purchase U.S. securities because Plaintiffs' ultimate goal was to invest indirectly in U.S. securities. Plaintiffs rely on five cases from courts outside the Eleventh Circuit, but none supports Plaintiffs' argument. We discuss each in turn.

In *AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148 (2d Cir. 1984), a Dutch investor alleged that "all the misrepresentations alleged in the complaint were stated to him by [defendants] in the United States". *Id.* at 150. The fact that the defendant partnership was formed for the purpose of investing in a building located in the United States was not determinative. *See id.* Rather, in finding that the Exchange Act applied to the

---

[2] *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 176 (2d Cir. 2008), cert. granted, 78 U.S.L.W. 3319 (U.S. Nov. 30, 2009) (No. 08-1191); *Itoba Ltd. v. LEP Group PLC*, 54 F.3d 118, 121-23 (2d Cir. 1995); *SEC v. Kasser*, 548 F.2d 109, 113-15 (3d Cir. 1977); *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 905-06 (5th Cir. 1997); *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 666-67 (7th Cir. 1998); *Cont'l Grain (Australia) Pty. Ltd. v. Pac. Oilseeds, Inc.*, 592 F.2d 409, 420 (8th Cir. 1979); *Grunenthal GmbH v. Hotz*, 712 F.2d 421, 424-25 (9th Cir. 1983); *Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 30-31 (D.C. Cir. 1987).

2

transaction at issue, the *Nederland* court focused on the fact that the alleged misrepresentations occurred in the United States. *Id.* at 154. Here, there are no such allegations.

*Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118 (2d Cir. 1998) ("*EOC*"), also fails to support Plaintiffs' theory. There, the securities offering in the fund was made to plaintiff's representative over the phone while he was on vacation in Florida, and purchase orders were completed and sent from Florida. *Id.* at 121. The court found that the phone calls and sales offers made to the plaintiff in the United States did not satisfy the conduct test, and concluded that application of the Exchange Act was inappropriate because "no relevant interest of the United States was implicated". *Id.* at 129.

Plaintiffs' reliance on *Psimenos v. E.F. Hutton & Co.*, 722 F.2d 1041 (2d Cir. 1983), is also unavailing. In *Psimenos*, a Greek national sued E.F. Hutton & Co. ("Hutton") under the Commodities Exchange Act over false statements made to him both orally outside the United States and in a pamphlet that emanated from Hutton's New York office. *Id.* at 1043-44, 1046. Applying the conduct test, the court held that "Hutton's activities in the United States in furtherance of the alleged fraud were substantial enough to establish subject matter jurisdiction". *Id.* at 1046. The court based its holding on the fact that misrepresentations were made in the pamphlet that emanated from Hutton in New York and that "Hutton's agents completed the alleged fraud by trading domestic futures contracts on American commodities exchanges". *Id.* Here, unlike *Psimenos*, Plaintiffs did not purchase commodities futures contracts or securities on a U.S. exchange; they purchased shares in overseas Optimal funds that were not traded on any exchange. Moreover, here the Explanatory Memoranda ("EMs"), which contained the alleged misrepresentations upon which Plaintiffs allege they relied in purchasing shares of the Optimal funds, were not prepared in and did not emanate from the United States.

Similarly, in *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 547 F. Supp. 309 (N.D. Ill. 1982), another Commodities Exchange Act case, Lebanese nationals alleged that Bache & Co. Lebanon ("Bache Lebanon"), a wholly-owned subsidiary of Bache & Co., Inc. ("Bache U.S."), a Delaware corporation, solicited commodity futures orders from plaintiffs in Lebanon and then transmitted those orders to Bache U.S. in Chicago for execution on U.S. exchanges. *Id.* at 310.

3

Applying the conduct test, the court found that "Bache Lebanon's transmission of the Tamaris' orders from Beirut to Chicago constitutes conduct within the United States" and that those transmissions together with "the execution of those orders on the Chicago exchanges were the final steps in the alleged scheme". *Id.* at 315. Again, it was not the plaintiffs' subjective investment intent that drove the court's analysis, but the defendants' conduct.

Plaintiffs also fail to find support for Exchange Act jurisdiction here in *IIT v. Cornfeld*, 619 F.2d 909 (2d Cir. 1980). IIT was a Luxembourg mutual fund that purchased securities issued by American and foreign corporations. Applying the conduct test, the *IIT* court found that the Exchange Act applied to the transactions at issue based on the fact that the prospectuses were all drafted in the United States, the accounting and auditing for all the corporations was done in the United States and an American firm was an underwriter for the securities. *Id.* at 920. Contrary to Plaintiffs' argument, IIT's investment intent was not a factor in the court's reasoning.

### B. No Wrongful Conduct Under Section 10(b) Is Alleged to Have Occurred in the United States.

Although the Complaint's Section 10(b) and Rule 10b-5 claim is based on allegedly fraudulent statements, Plaintiffs claim in their opposition that "[w]hat is at issue is Defendants' severely reckless or knowingly deficient supervision of Madoff in New York".[3] (Plf. Br. at 49.) The allegedly deficient supervision by Defendants is not culpable conduct under Section 10(b), which does not prohibit fraud, much less negligence, in the abstract.

---

[3] Plaintiffs suggest that *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 377 (S.D.N.Y 2005) stands for the proposition that where the "'essential core' or center of gravity" of the conduct of the fraudulent transaction is in the United States, jurisdiction is properly asserted. (Plf. Br. at 49.) But *Alstom* recognized that Section 10(b) liability involves making fraudulent misrepresentations, and jurisdiction therefore depends on where the alleged misrepresentations were made. *See id.* at 376-77, 391-92. Accordingly, the court found no Exchange Act jurisdiction over statements issued in France regarding events in the United States. *Id.* at 393-94. The only set of allegations for which the court found jurisdiction concerned a fraud by employees of an American subsidiary of the defendant corporation where "all of the allegedly fraudulent conduct occurred within the United States", *id.* at 395-96—facts fundamentally different from those alleged here.

4

Section 10(b) does not encompass "all breaches of fiduciary duty in connection with a securities transaction" or claims of "corporate mismanagement". *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472, 477 (1977). Rather, Section 10(b) requires "a material misrepresentation or material failure to disclose" in connection with an investor's purchase or sale of the securities at issue. *Id.* at 474. Only Defendants' alleged misrepresentations can be wrongful conduct under Section 10(b) and can serve as the basis for the conduct test. *See Morrison*, 547 F.3d at 176; *see also Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 907 (5th Cir. 1997); *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 987 (2d Cir. 1975).

Plaintiffs repeat the allegations in the Complaint regarding Defendants' alleged conduct in the United States. (Plf. Br. at 50-51.) In our opening brief, we addressed that alleged conduct and explained that it was no more than preparatory conduct to the alleged fraud. (Joint Br. at 9, 12-14.) Here, we address Plaintiffs' additional arguments as to the Santander Defendants and PwC Ireland.[4]

**Santander Defendants**: Plaintiffs argue that the occasional presence in New York of Defendant Echeverría (OIS's CEO), and the presence in New York on one occasion of a senior Santander board member, are enough to satisfy the conduct test. (Plf. Br. at 50.) Plaintiffs' reliance on *In re Vivendi Universal, S.A. Securities Litigation*, No. 02 Civ. 5571 (RJH), 2004 WL 2375830, at *3 (S.D.N.Y. Oct. 22, 2004), for this proposition is misplaced. The *Vivendi* court found that where Vivendi's CEO and CFO had "moved their operations to New York and spent at least half their time managing the company from the United States", and the complaint alleged that the CEO "authored" a fraudulent scheme to conceal Vivendi's deteriorating financial condition, the conduct test was satisfied. *Id.* at *4. There are no such allegations here.[5]

---

[4] As explained in the HSBC Defendants' brief, their alleged conduct was merely preparatory.

[5] Plaintiffs also allege that "OIS's affiliate, BSI, made the false statements from the United States by mailing the EMs containing the false statements from Miami". (Plf. Br. at 50.) As we

5

**PwC Ireland:** In the opening briefs, we explained that the visits by PwC Bermuda and PwC U.S. with Madoff were "merely preparatory" activity that does not satisfy the conduct test, and in addition cannot be imputed to PwC Ireland. (Joint Br. at 13-14; PwC Br. at 12-14.) Plaintiffs now contend that telephone calls by PwC Bermuda to Madoff can satisfy the conduct test. For the same reasons that the visits could not satisfy the conduct test, neither can the telephone calls.[6] Nor is it relevant that, according to Plaintiffs, PwC Ireland was required by professional standards "to conduct numerous procedures over Madoff". (Plf. Br. at 50.) Even if PwC Ireland was so required (which PwC Ireland denies), such procedures would have been merely preparatory to PwC Ireland's audit report in Ireland and could not constitute wrongful conduct under Section 10(b) for the conduct test.[7]

Contrary to Plaintiffs' argument, Defendants are not arguing that the situs of the preparation of the allegedly misleading statements is alone determinative of the reach of the Exchange Act under the conduct test. Rather, the central inquiry is where the misstatements were made and where people with responsibility for preparing the statements were located. *See*

---

explained in our opening brief, "these allegations regarding BSI's conduct are irrelevant because Plaintiffs do not bring a Section 10(b) claim against BSI". (Joint Br. at 12.) Moreover, mailing the EMs does not constitute making the misrepresentations alleged therein, and the "conduct test does not turn on the location from which the statements are mailed". (*Id.* (citing *SEC v. Berger*, 322 F.3d 187, 195 (2d Cir. 2003)).)

[6] Plaintiffs' reliance on *EOC*, 147 F.3d at 128 n.13, and *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972), for the proposition that making telephone calls and sending mail to the United States constitutes conduct within the United States does not support Plaintiffs' argument. In both of those cases, the wrongful misrepresentations at issue were made to plaintiffs in those communications. *EOC*, 147 F.3d at 121-22; *Leasco*, 468 F.3d at 1331, 1335. There are no such allegations here.

[7] *Cromer Finance Ltd. v. Berger*, No. 00 Civ. 2284 (DLC), 2003 WL 21436164, at *3 (S.D.N.Y. June 23, 2003), does not suggest that jurisdiction over PwC Ireland is appropriate. Unlike the Optimal funds at issue here, the fund being audited in *Cromer* was run by defendant Berger from New York, the financial statements for the fund were created at the investment advisor's office in New York, there were U.S. investors in the fund and the auditor's audit reports were sent to the United States. *Id.* Similarly, *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 73-75 (S.D.N.Y. 1999), alleges conduct in the United States that is far more significant than the conduct alleged here.

*CP Ships*, 578 F.3d at 1316; *Morrison*, 547 F.3d at 176-77; *Berger*, 322 F.3d at 194; *Bersch*, 519 F.2d at 987-88.

In *Morrison*, defendant National Australia Bank's ("NAB") financial statements contained allegedly false information regarding its American subsidiary's assets, which was provided to NAB by the subsidiary. 547 F.3d at 167. NAB's financial statements were prepared and issued in Australia, and the people responsible for the accuracy of NAB's financial statements—NAB's accountants, lawyers, bankers and executives—were in Australia. *Id.* 171, 176. Thus, the Second Circuit found that the "conduct compris[ing] the heart of" the Section 10(b) claim occurred in Australia, and the Exchange Act did not reach that conduct.[8] *Id.* at 175.

In *CP Ships*, defendant CP Ships Ltd. was incorporated in Canada and headquartered in England, but the company's chief executive officer, who "bore the primary responsibility not only for the alleged manipulation" of the company's financial information "but also for ensuring the accuracy of financial information provided to investors", was located in the company's Florida offices. 578 F.3d at 1307, 1313. In finding that the Exchange Act reached the alleged misstatements in the company's financial statements, the Eleventh Circuit expressly relied on the fact that the individuals responsible for the accuracy of the financial statements were in Florida. *Id.* at 1313-14.

*Berger* involved claims arising out of misrepresentations made in financial statements of a fund organized under the laws of the British Virgin Islands. 322 F.3d at 188. In holding that the Exchange Act reached the conduct at issue, the Second Circuit found that the culpable conduct occurred in the United States because the fund was run out of New York by defendant Berger, Berger created false financial information in New York, the false financial

---

[8] Plaintiffs attempt to distinguish *Morrison* by arguing that the investors in Morrison did not intend to invest in the United States. (Plf. Br. at 53.) However, the subjective intent of the *Morrison* plaintiffs' investment strategy is of no moment, here or in *Morrison* itself. Plaintiffs note that "[f]rom the perspective of a foreign investor who purchased stock in Australia (the relevant plaintiff for our action), there is no purposeful availment of the United States". (*Id.*) The personal jurisdiction concept of purposeful availment has no import under the conduct test.

7

information was transmitted overseas from New York, the fund's allegedly false financial statements were created in New York at the offices of the fund's investment advisor and Berger approved the false financial statements in New York. *Id.* at 194.

In *Bersch*, the securities of defendant I.O.S., Ltd., which was organized under the laws of Canada and had its principal place of business in Switzerland, were at issue. 519 F.2d 978. The prospectuses for the securities explicitly stated that they could not be offered to U.S. citizens or nationals wherever they were located, but a few sales were made to Americans, including the plaintiff. *Id.* at 980-84. Although there was conduct relating to the securities in the U.S., including drafting parts of a prospectus in New York which was finalized in Switzerland, the court found that the U.S. activity was merely preparatory to the act to which liability could attach—the dissemination of the prospectus. Thus, the Exchange Act did not reach the conduct at issue. *Id.* at 985 n.24, 987-88.

Here, the documents containing the alleged misrepresentations—the EMs for the Optimal funds and the financial statements of Optimal SUS—were prepared and finalized outside the United States, and the people with responsibility for those statements were located outside the United States. The conduct Plaintiffs allege to have taken place in New York does not rise to the level of significance that the courts found existed in *Berger* and *CP Ships*. At best, such conduct was "merely preparatory" to the alleged misrepresentations.[9]

---

[9] Plaintiffs also make a futile attempt to distinguish the cases Defendants rely upon by arguing that the case law concerning publicly traded securities is inapplicable to this case. (*See* Plf. Br. at 53.) Plaintiffs are wrong. *First*, not all of the cases cited by Defendants involve publicly traded securities. *Bersch*, for example, involved securities of an investment company offered for sale privately pursuant to prospectuses. 519 F.2d at 979-80. *Second*, for purposes of the conduct test, the determining factor is not whether the securities were publicly traded; rather, it is what the culpable conduct was and where it took place. In *CP Ships* and *Morrison*, as here, the allegedly wrongful conduct was making misrepresentations in the financial statements of the company in which plaintiffs had invested.

## II. THERE ARE NO EFFECTS IN THE UNITED STATES OR ON U.S. INVESTORS.

Plaintiffs do not satisfy the effects test. Plaintiffs do not dispute that there are no American investors in the Optimal funds or that shares in the Optimal funds did not trade on a U.S. exchange. (*See* Plf. Br. at 57-60.) Thus, Plaintiffs seek to use indirect and speculative effects in the United States to satisfy the effects test. Their attempt fails.

Plaintiffs try to satisfy the effects test by arguing that, although they purchased shares of Bahamian or Irish Optimal funds, they purchased those shares in order to invest indirectly in S&P 100 stocks listed on the NYSE. (Plf. Br. at 58.) Plaintiffs' argument is wholly without merit. Plaintiffs did not purchase S&P 100 stocks; they purchased shares in Optimal funds that did not trade on any exchange. Plaintiffs' rationale for their purchase is irrelevant for the effects test.

Plaintiffs then analogize Optimal SUS to a shell corporation for BMIS, suggesting that the relationship between Optimal SUS and BMIS is like that between the wholly-owned Netherlands Antilles subsidiary and its American parent corporation in *IIT*, 619 F.2d at 919-20. (Plf. Br. at 58-59.) Plaintiffs allege no facts in support of the novel analogy. Optimal SUS is not, and never has been, owned by BMIS; nor does Optimal SUS own BMIS.

Finally, Plaintiffs claim U.S. effects from Defendants' alleged "feeding" of Madoff's Ponzi scheme and argue that these effects are not general effects. (Plf. Br. at 59-60.) Plaintiffs cite no case law in support of this contention. Instead, Plaintiffs argue that "Madoff can be viewed as the equivalent of a U.S. exchange ... [j]ust as there is no question that transactions in the NYSE afford jurisdiction because they had an effect in the integrity and regulation of U.S. markets, so did investing in Madoff". (Plf. Br. at 60.) Once again, Plaintiffs' analogy fails. *First*, Plaintiffs did not "invest in Madoff". They invested in the Optimal funds, and even the Optimal funds did not "invest in Madoff"; the funds gave Madoff money to invest in other securities. *Second*, Madoff was not a U.S. exchange.

Because Plaintiffs' allegations fail both the conduct and effects tests, the Exchange Act does not apply extraterritorially to their claims.

9

# CONCLUSION

Defendants OIS, Echeverría, Inder Rieden, Wilkinson, Banco Santander, S.A. and PwC Ireland respectfully request that the Court dismiss Plaintiffs' claims against them under Section 10(b) of the Exchange Act (Counts 32 and 34) and Section 20(a) of the Exchange Act (Count 33) with prejudice.

December 23, 2009                               Respectfully submitted,

                                                /s/   Harry R. Schafer

| | |
|---|---|
| Richard H. Critchlow (Fla. Bar No. 155227) | Samuel A. Danon (Bar No. 892671) |
| Harry R. Schafer (Fla. Bar No. 508667) | Gustavo J. Membiela (Bar No. 0513555) |
| **KENNY NACHWALTER, P.A.** | **HUNTON & WILLIAMS LLP** |
| Miami Center – Suite 1100 | Mellon Financial Center |
| 201 South Biscayne Boulevard | 1111 Brickell Avenue, Suite 2500 |
| Miami, FL 33131 | Miami, Florida 33131 |
| (305) 373-1000 (telephone) | Telephone: (305) 810-2500 |
| (305) 372-1861 (facsimile) | Facsimile: (305) 810-2460 |
| rhc@kennynachwalter.com | sdanon@hunton.com |
| hrs@kennynachwalter.com | gmembiela@hunton.com |

Thomas G. Rafferty (*Admitted Pro Hac Vice*)
Antony L. Ryan (*Admitted Pro Hac Vice*)
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000 (telephone)
(212) 474-3700 (facsimile)
trafferty@cravath.com
aryan@cravath.com

*Attorneys for Defendant
PricewaterhouseCoopers Ireland*

*Attorneys for Banco Santander, S.A. Banco Santander International, Optimal Investment Services S.A., Manuel Echeverría Falla, Anthony L.M. Inder Reiden, and Brian Wilkinson*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Harry R. Schafer

# Service List

## *IN RE BANCO SANTANDER SECURITIES-OPTIMAL LITIGATION*
## CASE NO.: 09-MD-02073-CIV-HUCK/O'SULLIVAN

**Counsel for Plaintiffs**

Michael Hanzman
ACKERMAN, LINK & SARTORY, P.A.
2525 Ponce de Leon Blvd., Suite 700
Coral Gables, FL 33134
(305) 529-9100 (telephone)
(305) 529-1612 (facsimile)
mhanzman@alslaw.com

Joel H. Bernstein
Javier Bleichmar
Donald P. Delaney
Alan I. Ellman
Christopher J. Keller
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700 (telephone)
(212) 818-0477 (facsimile)
jbernstein@labaton.com
jbleichmar@labaton.com
ddelaney@labaton.com
aellman@labaton.com
ckeller@labaton.com

Stephen R. Astley
Paul Jeffrey Geller
Michael L. Greenwald
Jack Reise
Douglas S. Wilens
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000 (telephone)
(561) 750-3364 (facsimile)
sastley@csgrr.com
pgeller@csgrr.com
mgreenwald@csgrr.com
jreise@csgrr.com
dwilens@csgrr.com

Michael F. Ghozland
James I. Jaconette
Julie A. Kearns
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058 (telephone)
(619) 231-7423 (facsimile)
mghozland@csgrr.com
jamesj@csgrr.com
jkearns@csgrr.com

Stephen L. Brodsky
Ana Maria Cabassa
David R. Kromm
Robert S. Schachter
Hillary Sobel
Jeffrey C. Zwerling
ZWERLING, SCHACHTER & ZWERLING, LLP
41 Madison Avenue
New York, NY 10010
(212) 223-3900 (telephone)
(212) 371-5969 (facsimile)
sbrodsky@zsz.com
acabassa@zsz.com
dkromm@zsz.com
rschachter@zsz.com
hsobel@zsz.com
jzwerling@zsz.com

Michael Elliot Criden
Kevin Bruce Love
CRIDEN & LOVE, P.A.
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
(305) 357-9010 (telephone)
(305) 357-9050 (facsimile)
mcriden@cridenlove.com
klove@cridenlove.com

Daniel P. Chiplock
Steven E. Fineman
David S. Stellings
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500 (telephone)
(212) 355-9592 (facsimile)
dchiplock@lchb.com
sfineman@lchb.com
dstellings@lchb.com

Richard M. Heimann
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
25 Battery Street, 30th Floor
San Francisco, CA 94111
(415) 956-1000 (telephone)
(415) 956-1008 (facsimile)
rheimann@lchb.com

**Counsel for Defendants HSBC Securities Services (Ireland) Limited and HSBC Institutional Trust Services (Ireland) Limited**

Jason D. Joffe
Traci H. Rollins
SQUIRE, SANDERS & DEMPSEY LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
(561) 650-7200 (telephone)
(561) 655-1509 (facsimile)
jjoffe@ssd.com
trollins@ssd.com

Evan A. Davis
Joaquin P. Terceno
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (telephone)
(212) 225-3999 (facsimile)
edavis@cgsh.com
jterceno@cgsh.com

**Counsel for Defendant PricewaterhouseCoopers International, Ltd.**

Benjamine Reid
CARLTON FIELDS, P.A.
100 Southeast Second Street, Suite 4000
Miami, FL 33131
(305) 530-0050 (telephone)
(305) 530-0055 (facsimile)
breid@carltonfields.com

Samuel J. Salario
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 West Boy Scout Blvd., Suite 1000
Tampa, FL 33607
(813) 223-7000 (telephone)
(813) 229-4133 (facsimile)
ssalario@carltonfields.com

Fraser L. Hunter
Julia M. Lipez
Anne K. Small
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Ave.
New York, NY 10022
(212) 230-8800 (telephone)
(212) 230-8888 (facsimile)
fraser.hunter@wilmerhale.com
julia.lipez@wilmerhale.com
anne.small@wilmerhale.com

Howard M. Shapiro
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave.
Washington, D.C. 20006
(202) 663-6000 (telephone)
(202) 663-6363 (facsimile)
howard.shapiro@wilmerhale.com

**Counsel for Defendant PricewaterhouseCoopers, a Bermuda Partnership**

Laura Besvinick
HOGAN & HARTSON LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
(305) 459-6500 (telephone)
(305) 459-6550 (facsimile)
lbesvinick@hhlaw.com

Sanford M. Litvack
Dennis H. Tracey, III
HOGAN & HARTSON LLP
875 Third Ave.
New York, NY 10022
(212) 918-3000 (telephone)
(212) 918-3100 (facsimile)
slitvack@hhlaw.com
dhtracey@hhlaw.com

**<u>Counsel for Defendant
PricewaterhouseCoopers LLP</u>**

Melissa Fernandez-Stiers
Manuel A. Garcia-Linares
Alan G. Greer
RICHMAN GREER, P.A.
Miami Center, Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-4000 (telephone)
(305) 373-4099 (facsimile)
mfernandez@richmangreer.com
mlinares@richmangreer.com
agreer@richmangreer.com

Michael P. Carroll
Michael S. Flynn
James W. Haldin
James H. R. Windels
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000 (telephone)
(212) 701-5800 (facsimile)
michael.carroll@davispolk.com
michael.flynn@davispolk.com
james.haldin@davispolk.com
james.windels@davispolk.com